R. A. HURT *v.* YAZOO & M. V. R. Co.
A. C. LEWIS *v.* SAME.

(*Jackson.*   April Term, 1918.)

1. **RAILROADS.** Highway crossings. Warning signs. Repeal of statute.

Private Acts 1913, chapter 32, section 8, conferring on a board of county commissioners vested with the jurisdiction of roads of every class, by Private Acts 1911, chapter 237, full power to regulate railroad crossings, and to require railroad companies, at their own expense, to grade and provide safeguards and regulations as to such crossings, repeals Shannon's Code, sections 1574-1576, requiring road overseers to place warning signs at crossings at the county's expense. (*Post, pp.* 630-635.)

Acts cited and construed: Acts 1913, ch. 32, sec. 8. Acts 1883, ch. 167; Acts 1893, ch. 177; Acts 1895, ch. 74; Acts 1903, ch. 365; Acts 1905, ch. 74; Acts 1907, ch. 370; Acts 1909, ch. 499; Priv. Acts 1911, ch. 237.

Cases cited and approved: Whittaker v. Railroad, 132 Tenn., 576; Prescott v. Duncan, 126 Tenn., 106.

Case cited and distinguished: Graves v. Railroad, 126 Tenn., 148.

Code cited and construed: Secs. 1574, 1575, 1576 (S.).

2. **STATUTES.** Repeal by implication. Conflicting laws.

Though repeals by implication are not favored, when two conflicting statutes prescribe different and inconsistent rules of action about the same thing the latter must prevail. (*Post, p.* 635.)

Cases cited and approved: Frazier v. Railroad, 88 Tenn., 183; Monroe County v. Hudson, 90 Tenn., 741; Fisher v. Baldridge, 91 Tenn., 418; Lowry v. Railway, 117 Tenn., 515; Durham v. State, 89 Tenn., 723; Coal Co. v. Steel Co., 123 Tenn., 428; Condon v. Maloney, 108 Tenn., 82; Archibald v. Clark, 112 Tenn.,

534; Murphy v. State, 114 Tenn., 533; Hall v. State, 124 Tenn., 239.

3. **EVIDENCE.** Judicial notice. Development of railroads.

The supreme court knows, as a matter of history, that when the provisions of the Code were made the steam railroad had not been developed to the present high state of perfection, and that wood fire engines made much less speed than they do now. (*Post, p.* 636.)

4. **RAILROADS.** Highway crossings. Warnings at. Legislative regulation.

The legislature has complete power, as a proper police regulation, to prescribe the manner of giving warning at crossings. (*Post, p.* 636.)

5. **EVIDENCE.** Judicial notice. Populous locality.

The supreme court judicially know that the environs of Memphis are thickly populated. (*Post, p.* 636.)

6. **EVIDENCE.** Judicial notice. Travel.

The supreme court judicially know that there is much travel on the county roads. (*Post, p.* 636.)

7. **RAILROADS.** Negligence at highway crossing. Liability in absence of statute.

In absence of statute, the common-law liability of a railroad for negligence at highway crossings prevails, and it must give proper warning of the approach of trains. (*Post, pp.* 636-638 )

8. **RAILROADS.** Collision at highway crossing. Contributory negligence. Question for jury.

In a case of injuries at a crossing due to collision of a train with an automobile, the driver of which did not stop, look, and listen for the train which gave no warning of its approach, contributory negligence *held* for the jury. (*Post, pp.* 638-641.)

9. **RAILROADS.** Collision at highway crossing. Rule as to negligence.

The rule applying as to negligence of the parties in case of collision between a vehicle and a train at a highway crossing is whether they were in the exercise of ordinary care and prudence at the time of the accident. (*Post, p.* 641.)

10. **RAILROADS.** Crossing track. Application of look and listen rule.

In the case of crossing a railroad track, the look and listen rule is the proper measure of duty under ordinary circumstances, but circumstances may exist making the rule inapplicable. (*Post, pp.* 641-644.)

Cases cited and approved: Railroad v. Parks, 136 Tenn., 370; Railroad v. McMillan, 134 Tenn., 514; Railroad v. Morgan, 132 Tenn., 17; Railway Co. v. Roe, 118 Tenn., 601; Railroad Co. v. Dies, 98 Tenn., 662; Railroad Co. v. Howard, 90 Tenn., 150; Railroad Co. v. Foster, 88 Tenn., 672; Patton v. Railway, 89 Tenn., 378.

11. **NEGLIGENCE.** Negligence of driver of vehicle imputable to occupant.

Negligence of a doctor in driving an automobile could not be imputed to his partner, equally negligent, whom he assisted in an operation in the success of which both were interested, and carried as his guest to the patient's residence. (*Post, p.* 644.)

12. **RAILROADS.** Accident at crossing. Contributory negligence. Person riding with another.

One riding with another driving an automobile over a railroad crossing must exercise due care for his own safety by looking and listening, whether he is a guest or otherwise. (*Post, pp* 644, 645.)

Cases cited and approved: Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn., 487; Dale v. Tramway Co., 173 Fed., 787; Wash v. B. & O. R. R. Co., 233 Pa., 465; Brommer v. Pa. R. R. Co., 179 Fed., 577; Dickinson v. Erie R. R. Co., 37 L. R. A. (N. S.), 150.

13. **RAILROADS.** Contributory negligence. Persons in automobile.

The fact that persons injured in a collision at a crossing were in an automobile does not change the rule of ordinary care for their own safety at the time of the accident, but is a circumstance for consideration in determining the standard of care which must govern them and the degree of care they must exercise. (*Post, pp.* 645-647.)

140 Tenn.—40

14. **APPEAL AND ERROR.** Review.  Verdict.  Approval of trial court.

Where, notwithstanding the verdict for plaintiffs in a personal injury case, there was judgment for defendant, the verdict cannot be approved on appeal, when it appears that the trial judge was dissatisfied therewith because he believed the law and facts were against plaintiffs. (*Post, p.* 647.)

Case cited and approved: Hamburger v. Railroad, 138 Tenn., 123.

---

### FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.—
Hon. A. B. Pittman, Judge.

Wright, Miles, Waring & Walker and W. H. Borsje, for Hurt.

A. H. Kortrecht, for Lewis.

Sirley & Evans, Chas. N. Burch and H. D. Minor, for appellee.

Mr. Justice Lansden delivered the opinion of the Court.

These two actions were tried together in this court and will be disposed of in this opinion. The case of Dr. Lewis is to recover of defendant damages for personal injuries to himself and for destruction of an automobile. The case of Hurt, administrator, is to recover damages for the death of his intestate, Dr. Nelson.

The facts so far as need be stated, are as follows: Dr. Lewis and Dr. Nelson were partners in the practice of medicine in Memphis, Tenn. They were specialists in the diseases of the ear, eye, throat, and nose. Dr. Nelson had a patient south of Memphis a short distance, and he and Dr. Lewis visited the patient for the purpose of performing an operation. It was Dr. Nelson's patient, but they went to the patient's residence in Dr. Lewis's automobile. Dr. Lewis drove the automobile and Dr. Nelson went as a guest. There were no charges made by Dr. Lewis for transporting Dr. Nelson in the automobile. The home of the patient was on what is known as the Horn Lake road. The tracks of the defendant crossed this road at practically a right angle, though not entirely so. A train of defendant's was proceeding south over its tracks from Memphis to Vicksburg, Miss. The crossing of the railroad and the dirt road is commonly known as a "blind crossing." The train in proceeding south over the tracks of the company, passes through a deep cut which emerges a short distance north of the road crossing. The walls of this cut are stated to be about twenty-five feet high, except at the south, where the walls gradually decline to a level with the railroad tracks. On the east side of the cut are a great many trees, vines, and the like which obstruct the view of one traveling the dirt road as it enters on the railroad tracks. There is substantially an agreement in the testimony that a traveler on the dirt road cannot

see the train emerging from this cut until he is within about twenty feet of the crossing, and that the engineer and fireman on the train cannot see the traveler sooner.

Drs. Lewis and Nelson were returning from the operation referred to and had not spoken for perhaps one quarter of a mile before entering upon the crossing. Dr. Lewis was giving particular attention to the automobile, because the dirt road at and near the crossing was in bad repair, and it was deemed necessary to concentrate his attention upon the automobile and the road because of the roughness of the road. There is nothing to show what Dr. Nelson was doing. He and Dr. Lewis saw the approaching train about the same instant. Dr. Nelson cried "Look out!" about the time that Dr. Lewis saw the train out of the "corner of his eye."

The automobile was moving at from twelve to fifteen miles per hour when Dr. Lewis discovered the approaching train. He thinks he first tried to stop his car, but instantly concluded that he was too close to the railroad track, and then tried to rush across the track. The engine struck the automobile about the rear wheel, and projected Drs. Lewis and Nelson down the track and over an embankment about thirty feet high. The automobile was carried on the pilot of the engine about three hundred feet and was totally wrecked. Dr. Nelson received injuries from which he died in about one month, after much pain and suffering. Dr. Lewis received serious injuries to his

leg, which disabled him for several days; but, as the amount of damages cannot be considered by us upon this appeal, further details of the result of the accident will not be stated.

The plaintiffs' proof is that the train was seen by them as soon as it could have been seen. It also, shows, or tends to show, that the whistle was not, sounded and the bell was not rung; at all events, Dr. Lewis says that he did not see or hear the train until he was within twenty feet of the track. The engineer says he did not see the automobile until he was in the act of striking it. The fireman did not see the accident at all. He says he was engaged about his duties.

Drs. Lewis and Nelson approached the crossing from the side opposite to the side occupied by the engineer. The engineer testifies that the nose of his engine obstructs his view so that the nearest point he can see the left rail of the track is ninety-five feet. He says he was on the lookout ahead and did not see the occupants of the automobile until after it had entered upon the track and just at the instant of the collision. He put on his emergency brakes, but did not reverse his engine or sound the stock alarm. He says he did not have time to do more than was actually done. His evidence is not contradicted except as it may be insisted that he is contradicted by the physical circumstances shown in the proof. He stopped his train within about its length, which was about four hundred feet. There was no statutory

sign at this crossing. There was a sign consisting of a post and cross-arms in the form of an ''X,'' with the words ''Railroad Crossing.'' This sign was erected by the defendants. It appears that they have a standard sign for Shelby county which has been placed at all public road crossings. There was a statutory sign at this crossing about 1905, but it had been removed long prior to this accident. The Shelby county commissioners had the various road crossings in Shelby county examined, and found the cross-arm sign had been erected by the defendants, and this was satisfactory to them.

The learned trial judge submitted the case to a jury, which returned a verdict for $30,000 for Hurt, administrator, and $2,000 for Dr. Lewis. He over-ruled the motion for a new trial, and afterwards granted a motion for a directed verdict, stating at the time he was not satisfied that plaintiffs were entitled to recover under the law, or that they had sustained their case by a preponderance of the proof.

The defendants insist that the case is controlled by *Graves* v. *Railroad,* 126 Tenn., 148, 148 S. W., 239, and *Whittaker* v. *Railroad.,* 132 Tenn., 576, 179 S. W., 140.

The Graves Case is the leading case on the subject, and holds, in substance, that the engineer of a railroad locomotive is under no obligation to give warning of the approach of his train at the crossing of a railroad and dirt road, unless the crossing is marked by a statutory sign prescribed by section 1574, Shan. Code. Sections 1574, 1575, and 1576 are construed in

Hurt v. Y. & M. V. R. Co.

that case, and the court held that they are mandatory and contain the full measure of the railroad's obligation to the public.

These sections are as follows:

"Sec. 1574 (1) The overseers of every public road crossed by a railroad shall place at each crossing a sign marked: 'Look out for the cars when you hear the whistle or bell;' and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated. (2) On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be sounded at a distance of one-fourth of a mile from the crossing, and at short intervals until the train has passed the crossing."

"Sec. 1575. Every railroad company that fails to observe these precautions, or cause them to be observed by its agents or servants, shall be responsible for all damage to persons or property occasioned by, or resulting from, any accident or collision that may occur."

"Sec. 1576. No railroad that observes, or causes to be observed, these precautions, shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company."

The opinion in that case is a well-reasoned and able one. The conclusions reached are inevitable upon a construction of this statute. This is not disputed

by counsel for plaintiffs. It is practically conceded that, if the foregoing statutes are controlling, the defendant is not liable; but it is said that they have been repealed by chapter 32, section 8, Private Acts of 1913. This section is as follows:

"Sec. 8. That the board of county commissioners shall have full power and authority to regulate the crossings of county roads by steam railroads, electric railroads, or any other public service corporation; and they shall have the right to grant a right of way to such railroads for the purpose of crossing the country roads, where it can be done safely to the traveling public. It shall be within their power to require said railroads to make every safeguard necessary and appropriate for the safety of the traveling public, and to provide the grade at which they shall work said roads, or whether they shall go over or under the same, and to provide the safeguards and regulations as to said crossings; all of which must be at the expense of said railroads; and in cases where crossings are made by the railroads, it shall be the duty of said railroads to keep and maintain said crossings and fifty feet of the public road on either side of said railroad at their (the railroad's) expense. It is not intended by this act, however, to give the county commissioners the right to grant franchises to railroads, electric light companies, telephone companies, etc., to run their tracks or lines along and upon the public highways of the

county, but this right shall only be granted by the county court. ''

The Graves Case was decided at the April term, 1912, and this statute was passed in February, 1913.

This act does not provide for a county overseer; and, in fact, there has not been an overseer of roads in Shelby county since the act of 1883, chapter 167. There is an insistence by counsel for plaintiffs that the statutory precautions under consideration were repealed alike by Acts of 1883, chapter 167; 1893, chapter 177; 1895, chapter 74; 1903, chapter 365; 1905, chapter 74; 1907, chapter 370; 1909, chapter 499; Private Acts 1911, chapter 237; and the act just quoted.

The argument in support of this contention is that the various acts referred to abolish the office of road overseer in Shelby county, and place the control of the roads, and the appropriation of money for the support and maintenance of roads, in another author-ity than the quarterly county court; therefore, it is said, it was impossible for the overseer to erect the sign prescribed by the Code, and for that reason the statutory precaution did not apply.

We do not think that the acts referred to accomplish this result; however, we think the Act of 1913, section 8, does.

By chapter 237, Private Acts of 1911, the county court of Shelby county was practically abolished. The jurisdiction of roads of every class in the county was taken from the county court and vested in the

broad of county commissioners. This act was held valid in *Prescott* v. *Duncan*, 126 Tenn., 106, 148 S. W., 229. It will be observed that the act of 1913 confers upon the board of county commissioners full power and authority to regulate the crossings of county roads by steam railroads, and gives them the power to require railroads to make every safeguard necessary and appropriate for the safety of the traveling public, and to provide the grade at which they shall work the roads, or whether they shall go over or under them, and to provide safeguards and regulations as to crossings; all of which must be at the expense of the railroads.

We think this is wholly inconsistent with the provisions of the Code upon this subject. The Code of 1858 directs specifically what shall be done and who shall do it, and provides the liability of the railroad company for noncompliance with its provisions, and completely exonerates it in cases where it does comply. The act under consideration gives to the board of county commissioners "full power and authority to regulate the crossing of county roads by steam railroads." Under this act they can provide such crossings as they may deem proper, and such safeguards for the public as their judgment approves. We think this wholly inconsistent with the provisions of the Code requiring a sign to be erected by a particular official, and specifying the words that shall be placed on it, and the public officials that shall pay the expense of the sign. The Code requires the county

court to pay the expense, whereas the act under consideration requires the railroad to pay it.

We are not unmindful of the rule of law that repeals by implication are not favored, and that a statute will not be held to have repealed a preceding statute by implication when the two can stand together; but, of course, where the two statutes prescribe different and inconsistent rules of action about the same thing, and are in conflict, the later statute must prevail. *Frazier* v. *Railroad,* 88 Tenn., 183, 12 S. W., 537; *Monroe County* v. *Hudson* 90 Tenn., 741, 18 S. W., 405; *Fisher* v. *Baldridge,* 91 Tenn., 418, 19 S. W. 227; *Lowery* v. *Railway,* 117 Tenn., 515, 101 S. W., 1157; *Durham* v. *State,* 89 Tenn., 723, 18 S. W., 74; *Coal Co.* v. *Steel Co.,* 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278.

It is not a sufficient answer to this conclusion to say that the provisions of the Code are a general law, intended to regulate road crossings throughout the State, while the act under consideration is a local law, applicable only to Shelby county. While such a law is local in its application, it is general in its characteristics, and it has been held by this court that such a law is valid, and must be given force and effect in the territory to which it applies. *Condon* v. *Maloney,* 108 Tenn., (24 Pick.), 82, 65 S. W., 871; *Archibald* v. *Clark,* 112 Tenn., (4 Cates), 534, 82 S. W., 310; *Murphy* v. *State,* 114 Tenn. (6 Cates), 533, 86 S. W., 711; *Hall* v. *State,* 124 Tenn. (16 Cates), 239, 137 S, W., 500.

. We know as a matter of history that, when the provisions of the Code were made, the steam railroad had not been developed to its present high state of perfection, and the wood-fired engines made much less speed than they do at the present time. By a simple calculation we may know that a modern locomotive, traveling at a rate of speed of forty-five or fifty miles per hour, can comply with the requirements of the Code by sounding the whistle within one quarter of a mile, and arrive at the crosing in fifteen or twenty seconds.

All of the authorities agree that the legislature has complete power, as a proper police regulation, to prescribe the manner of giving warning at crossings. *Graves* v. *Railroad,* supra. It may well be that the legislature passed the act in question to obviate the holding in the Graves Case. The accident in that case and in this case happened at the same crossing.

The Horn Lake road is a well-traveled thoroughfare, and, while it is not proven, we know judicially that the environs of the city of Memphis are thickly populated, and there is must travel on the county roads.

The effect of the repeal of the sections of the Code is to restore the common-law liability of the defendant. Therefore it was the duty of the defendant to give proper warning of its train's approach to this crossing. The features of the Code provisions which repealed the defendant's common-law liability were the provisions which required the overseer to erect

the statutory sign, and which exonerated the railroad company from liability if the crossing was not proper ly distinguished by the sign. If the statutory sign were there the defendant was made responsible for all damages if it did not comply with the statute. In the Graves Case the followng language was used:

"If this statute had simply provided that the road overseer should mark these crossings in a particular way, and that railroad companies should cause the locomotive bell or whistle to be sounded on approach- ing such marked crossings, then it might be argued that, inasmuch as the statute contained no provision for unmarked crossings, railroad companies would be held to their common-law duties with respect to them. Such a result cannot be reached here, how- ever, by reason of the explicit provisions of the Code. No means of warning, save by the bell or whistle, are in common use by the railroad companies, and it is not suggested that they could give warning of the approach of their trains in any other way. The statutory provision here is couched in positive, neg- ative terms, and is that no engine driver shall be required to sound the bell or whistle on approaching a crossing, unless such crossing is marked by a sign put up by the road overseer, with the inscription prescribed. There is an absolute repeal of the com- mon law on the subject, and there is no room for speculation about the matter."

This appears to have been the practical construction placed on the road law applicable to Shelby county,

both by the railroad companies and the board of county commissioners. The railroad companies adopted a standard sign as early as 1906, and they had erected the cross-arm referred to above at all of their public road crossings. It is not shown that any action was taken by the county authorities with respect to these cross-arm signs prior to the passage of the act of 1913. However, after that act was passed the board of county commssioners assumed jurisdiction of all public crossings of county roads and railroads, and had each crossing inspected. When the result of the inspection was reported, it showed that the railroads had erected the cross-arm sign at all of the crossings. This was satisfactory to them.

It is said for defendants that Drs. Lewis and Nelson were guilty of such contributory negligence as would bar their right of recovery as a matter of law. We think this contention is not well made. The proof does not show the height of the embankment along which they drove the automobile for a distance west of the railroad track, but it does show the height of the embankment upon which the railroad is located near the crossing to be about thirty feet. From the photographs in the record it would appear that the county road is upon an embankment which gradually inclines from approximately nothing to about thirty feet. This is an estimate from circumstances in the record, and is not directly proven. It is proven, however, that the embankment is so high that, if the automobile had skidded so as to run off the embankment,

it would have endangered both life and limb. The county road, for some distance before it crossed the railroad, had been washed out, and loose dirt had been filled in in places, and there were holes and rough places elsewhere on the surface of the road. Dr. Lewis, who was driving the automobile, was absorbed in the management of his machine so that he did not realize his approach to the railroad until he saw the train at a point about twenty feet from the railroad tracks. Dr. Nelson saw it at the same instant, and cried, "Look out!" What Dr. Nelson was doing before that time is not shown.

The plaintiffs' proof tends to show that the train entered upon the crossing without sounding the whistle or the bell, or taking any other steps to give warning of its approach. This, of course, nothing else appearing, made a question for the jury against the defendant under the common law. The question is whether the conduct of Drs. Lewis and Nelson is such that, notwithstanding defendant's negligence, bars their right of recovery.

Some courts have laid down the dogmatic formula that the driver of an automobile cannot enter upon a railroad track without first stopping, looking, and listening at a point where stopping, looking, and listening will avail to discover the presence of a train on the track, if such be the case. The learned trial judge seemed to think that plaintiffs should have flagged themselves across the railroad. However, it must be admitted that plaintiffs had the same right

to travel along the county road which defendants had to operate their trains upon the railroad. Their rights at the crossing were equal at the common law. Dr. Lewis was also charged with the duty of looking out for his own safety and the safety of his guest along the county road. The instincts of self-preservation would naturally absorb him in the driving of the automobile because of the high embankment and the rough condition of the road. We think it is clear that if Dr. Lewis had stopped his car before entering upon the railroad track, and had looked and listened, that the accident would have been avoided. It is reasonably clear that if the defendants had given warning of the approach of the train to the crossing in sufficient time before it entered upon the crossing, that the accident would have been avoided. The absorption of Dr. Lewis in the driving of his car prevented him from realizing that he was approaching the railroad track, and he did not see the train until he was within twenty feet of the track, and it was then some two hundred feet away. He saw it at the first possible moment, but his car was moving so rapidly it could not be stopped in time to prevent the accident unless the train had slackened its speed. The engineer states that the nose of his boiler projected in front of him to such an extent that he could not see the left-hand rail of the track nearer than ninety- five feet in front of the train. If he was two hundred feet away when plaintiffs were within twenty feet of the track, it is probable that he should have seen them as they

were about to enter upon the track in time to have prevented the accident. He might have seen them the full distance while they moved twenty feet and the train moved one hundred and five feet. We cannot say, as a matter of law, that this is true or untrue, but we think it is a question for the jury to determine. We also think we cannot say as a matter of law that the absorption of Dr. Lewis in the driving of his automobile, which caused him not to realize that he was entering upon the track, was such contributory negligence as should bar a recovery. We think reasonable men may well disagree about the conclusion to be drawn, and therefore it was a jury question.

The true rule which applies to this as all other questions of negligence is whether plaintiffs and defendants were in the exercise of ordinary care and prudence at the time of the accident.

In the case of crossing a railroad track, the look and listen rule is the proper measure of plaintiff's duty under ordinary circumstances; however, circumstances often exist which make the rule inapplicable. We think such may be true of the circumstances of this case. It is not reasonable to expect one to stop, look, and listen before entering upon a railroad crossing when he is not conscious, for an adequate reason, that he is approaching such a crossing. In such case the inquiry should be whether the reason for his not realizing the approaching danger is such as would probably excuse him. We cannot say as a matter of law that Dr. Lewis should have known that he was

140 Tenn.—41

approaching the railroad crossing, notwithstanding the conditions of the road. It is a fact to be found by the jury and not a question of law to be determined by the court. He had passed along the road at this point just an hour before the accident, and once about two years previous to that. While he knew there was a crossing of the dirt road and the railroad, he was not accustomed to the place. If he had seen the track, or if his reasons for not seeing it were superinduced by a want of due care, he could not recover.

Our cases are in accord with this holding. Some of them are reviewed in the case of *Railroad* v. *Parks,* 136 Tenn., 370, 189 S. W., 695. In that case the exception to the look and listen rule is declared to be well established, and the belief was expressed that there had been no deviation from the rule, with its exceptions, in any of our cases. The cases referred to in that case were cases in which some faculty of the deceased, or plaintiff, was impaired so that all could not be used, or that it would have been useless to stop, look, and listen because of other circumstances attending upon the accident. The rule that it is negligence *per se* to enter upon a railroad track without looking or listening has been applied to the ordinary case in which the plaintiff, or the deceased, was not prevented from seeing or hearing by any other circumstances, and had the use of his faculties. In such case an ordinarily prudent man is deemed, under the law, to be guilty of such negligence as would bar a recovery if he entered upon the track without doing so. And

it is only in exceptional cases that the rule does not apply, and in cases in which the facts relied upon as creating the exception itself are not superinduced by the want of due care. But what is due care in the circumstances of the exception is ordinarily a question for the jury. *Railroad* v. *Parks,* 136 Tenn., 370, 189 S. W., 695; *Railroad* v. *McMillan,* 134 Tenn., 514, 184 S. W., 20; *Railroad* v. *Morgan,* 132 Tenn., 17, 175 S, W., 1148; *Railway Co.* v. *Roe,* 118 Tenn., 601, 102 S. W., 343; *Railroad Co.* v. *Dies,* 98 Tenn., 662, 41 S. W., 860; *Railroad Co.* v. *Howard,* 90 Tenn., 150, 19 S. W., 116; *Railroad Co.* v. *Foster,* 88 Tenn., 672, 13 S. W., 694, 14 S. W., 428; *Patton* v. *Railway,* 89 Tenn., 378, 15 S. W., 919, 12 L. R. A., 184.

It is insisted that Dr. Nelson should have seen the train before Dr. Lewis saw it. It is in proof, however, that Dr. Nelson did see it at the earliest point at which it could have been seen, and when the train was two hundred feet away, and gave warning to Dr. Lewis. If the train was two hundrd feet way, and if the engineer could have seen plaintiffs approaching the track, and if he had applied his emergency brakes, it is probable that the accident would not have occurred. It is true he was not driving the car, and that he was under the duty of exercising due care for his own safety; but it is also true that he could not see the train until he approached within twenty feet of the track, and he did see it at that point. It was for the jury to determine his negligence, if any,

and its degree, and whether it proximately or remotely contributed to his death.

As heretofore stated, Drs. Lewis and Nelson were partners in the practice of medicine; they had gone to this place to perform a surgical operation; it was Dr. Nelson's case, and he performed the operation, but Dr. Lewis assisted him, and carried him to the patient's residence in his own automobile as a guest and without charge. They were jointly interested in the success of the operation, and in that sense they were upon a joint enterprise. The interest they had in the journey would doubtless continue until they had returned to their offices at Memphis, or until they had declared the journey at an end by act or word. The question of imputable negligence does not really arise in the case. The proof shows that Dr. Nelson saw the train at the same instant Dr. Lewis saw it, and gave the alarm. His negligence, if any, is as great or greater than that of Dr. Lewis, and therefore there is no basis for the contention that Dr. Lewis's negligence is imputable to Dr. Nelson.

We think that Dr. Nelson was under the duty of exercising due care for his own safety, notwithstanding that Dr. Lewis was driving the automobile. This would be true whether he was a guest of Dr. Lewis, or whether they were engaged upon a joint enterprise in which they were both interested. Dr. Lewis was not a common carrier, and was in the exercise of a friendly act in which he had an interest in transporting Dr. Nelson in his automobile.

There is every probability that he would have heeded any warning given him by Dr. Nelson.   There was no relation of master and servant, or of carrier and passenger, in the conventional sense existing between them.   The question is discussed, and the authorities are reviewed and cited, in the case of *Knoxville Ry. & Light Co.* v. *Vangilder,* 132 Tenn., 487, 178 S. W., 1117, L. R. A., 1916A, 1111.   That was a case of husband and wife who met with an accident while the wife was riding with her husband in an automobile driven by him.   The husband was negligent, and his right of recovery was held to be barred by his negligence, but the wife was allowed to recover because she was guilty of no negligence, and the negligence of the husband was not imputed to her.   There may be a difference between the case of husband and wife, as in the one just cited, and the case of host and guest, as in the case under discussion; but the difference is slight and the principle should be the same.   The guest is under the same duty to look out for his own safety as he would be if traveling alone.   He cannot close his eyes to obvious danger and rely exclusively upon the driver of the automobile to protect him.   It is a question of ordinary care and proximate cause.

The facts that plaintiffs were riding in an automobile, and that Dr. Nelson was the guest of Dr. Lewis, cannot change their duty to exercise due care for their own safety.   This duty is personal to each one.   A wide discussion will be found in the following cases: *Dale* v. *Tramway Co.,* 173 Fed., 787, 97 C. C. A.,

511, 19 Ann. Cas., 1223, and note; *Wash* v. *B. & O. R. R. Co.*, 233 Pa., 465, 82 Atl., 755, Ann. Cas., 1913B, 679, and note; *Brommer* v. *Pa. R. R. Co.*, 179 Fed., 577, 103 C. C. A., 135, 29 L. R. A. (N. S.), 924, and note; *Dickinson* v. *Erie R. R. Co.*, cg L. R. A. (N. S.), 150, and note; R. C. L., pp. 1205 and 1207.

The fact that plaintiff and deceased were in an automobile cannot change the rule of ordinary care as discussed in this opinion. Our cases cited above recognize that a railroad is an admonition of danger, and that ordinarily it is negligence *per se* to enter upon it without looking and listening. Some of the cases above cited from other jurisdictions hold that the driver of an automobile must stop, look, and listen before entering upon a railroad track because of the control which the driver has over, and the absence of nervousness, upon the part of the machine. These are facts to be considered in determining whether the driver was in the exercise of reasonable care at the time he entered upon the railroad track, but we think that our cases without exception cannot be relied upon as authority for the proposition that the driver must stop, look, and listen under all circumstances. The same exceptions which have been noted heretofore would apply to the driver of an automobile. The control he has over his machine, and the fact that it is a machine· which cannot become nervous, are circumstances to be considered in determining the standard of care which must govern him, and the degree of care which he must exercise. But when the

Hurt v. Y. & M. V. R. Co.

driver is absorbed in other matters, as in this case, and if the jury should find that he was in the exercise of due care while so absorbed, it could not be said that he should be required to stop before entering upon a track, the existence and location of which he was unconscious. At least it is a question of due care, and in cases in which the court cannot say that either party was guilty of negligence *per se* it is a question for the jury.

We cannot approve the verdict of the jury because the trial judge did not do so. His remarks show that he was dissatisfied with the verdict because he believed the law and the facts were against the plaintiffs. We cannot affirm such a holding. *Hamburger* v. *Railroad* 138 Tenn., 123, 196 S. W., 144.

Accordingly the case will be reversed and remanded for trial.