YAZOO & M. V. R. CO. *v.* WILLIAMS.

SAME *v.* WITHERS & WELLFORD OIL CO.

(*Jackson*, April Term, 1944.)

Opinion filed February 3, 1945.

Evans, Evans & Creson, of Memphis, C. A. Helsell, of Chicago, Ill., and Lucius E. Burch, Jr., of Memphis, for plaintiff in error (defendant below).

Charles L. Glascock, of Memphis, for defendant in error (plaintiff below).

Mr. Chief Justice Green delivered the opinion of the Court.

These two suits were brought against the Railroad Company to recover damages for injuries to a truck and to the driver sustained in a collision of one of defendant's trains and the motor vehicle at a road crossing near Memphis. There was a verdict for $2,000 in favor of the owner of the truck upon which judgment was en-

tered. There was a verdict for $2,000 for personal injuries suffered by the driver, reduced to $1,250 by *remittitur,* and judgment entered for the latter sum. The two cases were tried together. The Court of Appeals affirmed both judgments and we have granted petition for *certiorari.*

Since in our opinion a new trial must be awarded, we do not undertake any detailed statement of the facts. We think the judgments of the lower courts must be reversed for two errors in the charge of the trial court.

There was conflict in the proof as to whether the road over which the railroad tracks crossed was a public road or a private road, whether there was much or little travel over this road, whether the crossing at which the accident occurred was of that kind known as a dangerous crossing. In this plight of the case the circuit judge charged the jury as follows:

"Now gentlemen of the jury, the Court instructs you that the railroad company had the duty at the time and place and immediately before the happening of this accident, of ringing its bell or whistling so as to give reasonable warning to those in the lawful use of the crossing of the approach of that train, regardless of whether the locomotive was pushing or pulling that string of cars. In the law there is no distinction; and that, of itself, is no act of negligence."

This case only went to the jury upon the liability of the Railroad Company at common law. The Tennessee statute as to the duty of railroad companies was not operative, the accident occurring during a switching operation. This being a common law case, we think the quoted instruction of the trial judge was erroneous for two reasons.

■ First. The character of the crossing was in dispute—whether it was a much traveled or dangerous crossing, or otherwise. The duty of a railroad company as to giving warning of the approach of its trains to crossings depends at common law on the nature of the crossing. After a review of many authorities in *Railroad Co.* v. *Sawyer,* 114 Tenn. 84, 90, 86 S. W. 386, 390, speaking on the subject, this Court said:

■ "After an examination of all the authorities cited, we think the true rule deducible therefrom is that, if the place is dangerous, then the company is onerated with the duty of warning travelers on the highway of the approach of its trains, but whether the place, as a matter of fact, is dangerous, is a question for the determination of the jury."

It is true that the Court was dealing with an overhead crossing in the *Sawyer Case* where the highway passed under the railroad tracks, but the authorities reviewed and approved applied equally to grade crossings and it was the intention of the Court to state a rule applicable to all crossings in the absence of statute or ordinance.

The textwriters uniformly express the same view as that indicated by this Court in the *Sawyer Case.* Thompson on Negligence, sec. 1553; 3 Shearman and Redfield on Negligence, p. 1086; 3 Elliott on Railroads, p. 510; 22 R. C. L. 1004; 52 C. J. 220.

■ We accordingly think that the trial judge should have left it to the jury to say whether it was the duty of the Railroad Company to give warning of the approach of trains to this particular crossing instead of telling the jury that such a duty rested upon the Company as a matter of law.

To sustain the propriety of the foregoing portion of the charge, plaintiffs' counsel refer us to *Southern Rail-*

*way Co.* v. *Penley,* 175 Tenn. 380, 134 S. W. (2d) 177, and *Hurt* v. *Yazoo & M'. V. R. Co.,* 140 Tenn. 623, 205 S. W. 437. In these cases it was said that a duty rested on a railroad company to give warning of the approach of its trains to streets and highways involved in those cases. In the *Penley Case* the crossing was found to be a dangerous crossing in the City of Bristol. In the *Hurt Case* the crossing was one of a much traveled thoroughfare, as the Court judicially noted. As we have heretofore pointed out, the character of the crossing here involved is in controversy, whether dangerous or not, whether much traveled or not, whether a public or private road. The language used in the *Penley* and the *Hurt Cases* is not therefore applicable to the present situation.

Second. It is to be observed in the language quoted from the charge that the court told the jury the Railroad Company had the duty "of ringing its bell or whistling so as to give reasonable warning to those in the lawful use of the crossing of the approach of that train, etc." This Court has not hitherto undertaken to prescribe the exact nature of the warning which a railroad company must give under the common law at crossings where warning is required. Ordinarily this question is not of importance since the usual method of warning is by locomotive whistle or bell, in the absence of a flagman or automatic signal device.

The facts of the present case, however, are peculiar. The train involved consisted of eighteen cars which, were being pushed by an engine in the rear. The proof tends to show that an employee of the Railroad Company was on the front car as the train approached the crossing, that the truck was moving very slowly toward the crossing and stopped within a few feet of the crossing, the driver saying that he stopped to shift gears. The flagman

testified that at this time he yelled to the driver of the truck by way of warning. There seems to be no doubt but that the flagman did make this outcry, for it was heard by witnesses testifying for plaintiffs and first attracted the attention of some of them to the situation. In this connection it is argued for the Railroad Company that this yelling of the flagman should have been more readily heard by the driver of the truck than the whistle or bell on the engine eighteen cars removed around a curve. So even if it should be found a duty rested upon the Railroad Company to give warning of the approach of its trains, it was not absolutely required that such warning be given by bell or whistle, if other adequate means were available and employed. The question was whether any adequate warning was given, and it too was a jury question.

We think the trial judge also improperly instructed the jury with reference to the measure of damages for the truck. He said:

"Now the measure of damages in the event that you should find for the plaintiff in the latter case will be the amount of the reasonable and necessary repairs to the equipment of the plaintiff Withers & Wellford Oil Company, as shown by the evidence, if so shown, together with the reasonable value of the use of that equipment during the period, and that period alone, that it would reasonably be required to repair that damage to that equipment produced by the negligence, if you find that, of the defendant Yazoo & Mississippi Valley Railroad Company."

It is insisted for the defendant that the true measure of damages under the facts of this case was the difference in the value of the vehicle immediately before the accident and immediately after the accident, and we

think this insistence is correct. Such is the general rule.

■ In the present case the truck was not repaired. Proof was introduced as to the cost of repairs and as to the time that would be required for repairs. There was no proof as to the value of the truck before the accident. Under such circumstances we think that the owner's damage could not properly be estimated by the cost of repairs and loss of use of his truck. In order for that scale to be adopted there should be proof showing that when repaired the vehicle was of substantially the same value as before the accident. If it was of less value than before the accident it would wrong an owner to limit him to the cost of repairs. If it was of greater value after repairs the owner could not be entitled to the increase. So with no proof as to the value of this truck before the injuries nor after the injuries, no repairs having been made, we think the general rule should have been applied and damages measured by the difference in the value of the vehicle before the accident and its value after the accident.

In support of the foregoing we refer to *Anderson* v. *Innman,* 3 Tenn. App. 195; Berry on Automobiles (7 Ed.), sec. 5.229; 6 Blashfield Cyclopedia of Automobile Law (Perm. Ed.), Pt. 1, sec. 3411; Huddy on Automobiles (5 Ed.), sec. 719, idem. 9th Ed., Vols. 17-18, sec. 252, and cases collected in A. L. R. Notes, Vol. 4, p. 1350, Vol. 32, p. 706, Vol. 78, p. 910.

In *Perkins* v. *Brown,* 132 Tenn. 294, 177 S. W. 1158, L. R. A. 1915F, 723, Ann. Cas. 1917A, 124, the controversy was as to the owner's right to recover for loss of use of his car while being repaired. Obviously that was a case where the vehicle was restored to its original value by the repairs.

Some other errors are assigned on the petition for *certiorari* but we do not think they require discussion. For the reasons stated, the judgment of the Court of Appeals is reversed and these cases remanded for a new trial.