IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 29, 2001 Session

## RICHARD CROWE v. FIRST AMERICAN NATIONAL BANK

**A Direct Appeal from the Circuit Court for McNairy County**
**No. 4759     The Honorable Jon Kerry Blackwood, Judge**

---

**No. W2001-00800-COA-R3-CV - Filed December 10, 2001**

---

Owner of a pickup truck sued the bank that financed the purchase for conversion after the bank repossessed the truck. The trial court entered judgment on a jury verdict for plaintiff in the amount of $250,000.00. Bank appeals. We affirm in part reverse in part and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBYLILLARD, J., joined.

Andy Rowlett, Nashville; Stephen Craig Kennedy, Selmer, for Appellant, First American National Bank

Terry Abernathy, Selmer, For Appellee, Richard Crowe

### OPINION

Plaintiff, Richard Crowe ("Crowe"), sued defendant, First American National Bank ("Bank"), for damages resulting from the repossession of his pickup truck financed by Bank. The jury returned a verdict against Bank in favor of Crowe in the amount of $250,000 for conversion, finding that the Bank did not have the right to repossess Crowe's vehicle. The Bank moved to set aside the jury verdict and enter judgment in accordance with the Bank's motions for directed verdict. Alternatively, the Bank moved for a new trial or to alter the judgment amount. The trial court denied all of the Bank's post-trial motions. The Bank has appealed, presenting seven (7) issues for review.

By Retail Installment Sale Contract and Security Agreement, hereinafter referred to as the sales contract, dated March 12, 1994, Crowe purchased a new 1994 Chevrolet Pickup Truck from Lofton Chevrolet, Inc., and the contract was assigned to Bank who provided financing on the truck. The total sale price of $27,394.48 was to be paid in 48 monthly installments of $409.26, beginning on April 25, 1994. The contract specifically provides that "[y]ou [Crowe] are giving the Creditor [Bank] a security interest in the vehicle being purchased." The contract provides in pertinent part:

Late Charge. You [Crowe] will have to pay a late charge on each payment received by the Creditor [Bank] more than fifteen days late. The charge is shown on the front. Acceptance of a late payment or late charge does not excuse your [Crowe's] late payment or mean that you [Crowe] can keep making payments after they are due. The Creditor [Bank] may also take the steps set forth below if there is any late payment.

\* \* \*

Payments. You [Crowe] agree to make all payments in accordance with the payment schedule . . . on their respective due dates at the main or any branch office of the Creditor [Bank]. . . .

\* \* \*

Required Repayment in Full Before the Schedule Date. If you fail to pay any payment according to the payment schedule; if a processing in bankruptcy receivership or insolvency is started by you or against you or your property; if the Creditor honestly feels its prospects of payment are impaired; if you are in default on any other obligation to the Creditor; or if you break any of the agreements in this contract (default), all that you owe on this contract will be due and payable at once at the Creditor's option. In calculating what you owe, the Creditor will not charge a prepayment processing fee, but you will be obligated to pay the Bank Processing fee.

Repossession of the Vehicle for Failure to Pay. Repossession means that, if you [Crowe] fail to pay according to the payment schedule or if you break any of the agreements in this contract (default), the Creditor [Bank] can take the vehicle from you.

\* \* \*

Delay In Enforcing Rights and Changes of this Contract. The Creditor can delay or refrain from enforcing any of its rights under this contract without losing them. For example, the Creditor can extend the time for making some payments without extending others. Any change in terms of this contract must be in writing and signed by the Creditor. No oral changes are binding. If any part of this contract is not valid, all other parts will remain enforceable.

In addition to the above contract, Crowe entered into an "Agreement for Purchaser to Provide Accidental Physical Damage Coverage", hereinafter referred to as the insurance contract, with the Bank on March 12, 1994. This agreement provided that:

> I understand that to provide protection from serious financial loss, should an accident or loss occur, my installment contract requires the vehicle or other goods described below to be continuously covered with insurance against the risks of fire, theft and collision, and that failure to provide such insurance gives the Seller or his Assignee the right to declare the entire unpaid balance immediately due and payable. Accordingly, I have arranged for the required insurance through the insurance company shown below and have requested my agent to note the Seller's or his Assignee's interest in the goods and endorse the policy with a loss payable endorsement (ISO-51) or equivalent in favor of the Seller or his Assignee.

On September 29, 1997, the Bank repossessed the truck and sold it because allegedly Crowe defaulted upon his obligations to make the scheduled monthly payments and also failed to have his insurance agent endorse the policy with a loss payable endorsement in favor of the Bank. However, Crowe alleges in his complaint and asserted at trial that he fulfilled his obligations under the terms of both contracts by making all of the required monthly payments and continuously carrying insurance on the truck at all times prior to the Bank's repossession. Crowe asserts that the Bank's repossession constitutes a conversion[1] of his vehicle.

The first issue presented for review as stated in the Bank's brief is:

> I. Whether the Bank had the right to repossess the truck under its contract with Crowe.

This issue is, in essence, the alleged error of the trial court in denying the Bank's motion for a directed verdict. When deciding a motion for a directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the plaintiff under any theory he has advanced. *Id.*; *Conatser*, 920 S.W.2d at 647.

---

[1]The trial court concluded that Crowe's only cause of action was for conversion.

In the instant case, the sales contract provides and the parties do not dispute that Crowe's payments were due on the 25th of each month beginning April 25, 1994. The sales contract is clear and unambiguous that Crowe agreed "to make all payments in accordance with the payment schedule . . . on their respective due dates" and that "[a]cceptance of a late payment or late charge does not excuse [Crowe's] late payment or mean that [Crowe] can keep making payments after they are due." The sales contract is equally clear that if Crowe defaults, then the Bank may repossess the truck. Furthermore, Tennessee statutory law provides that "[a]fter default, a secured party may take possession of the collateral . . . . [and]. . . sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." T.C.A. § 47-9-609-610 (Supp. 2000).

Our Supreme Court has held that "as a result of a course of dealing between parties [to a contract], the holder of an indebtedness may be deemed to have waived the right [to declare a default] without giving prior notice to the debtor of his intention to do so." *Lively v. Drake*, 629 S.W.2d 900, 903 (Tenn. 1982). In *Lively*, appellants executed a promissory note on August 15, 1972, payable in monthly installments and the note was secured by a deed of trust upon the appellants' residence. *Id*. at 901. Appellants made regular payments until November 1976 at which time appellants missed one payment. *Id*. at 902. This payment was later made, but beginning in February 1977 payments were irregular. *Id*. A pattern of irregular payments continued through 1977 and the entire calendar year 1978. *Id*. On January 3, 1979, appellee delivered the note to the trustee under the deed of trust and called upon the trustee to commence foreclosure. *Id*. Actual notice of the decision to accelerate the note and foreclose, as authorized by the terms of the note and deed of trust, was not communicated to appellants until January 18, 1979. *Id*. In the meantime, unaware of the decision to accelerate and foreclose, and in accordance with the practice which by this time had become established, appellants mailed appellee a check for two monthly payments. *Id*. The two payments were credited on the debt and the checks were deposited into appellee's account. *Id*. The Tennessee Supreme Court noted that "[i]t is thus established that four days after foreclosure notice had been mailed to appellants, appellee received and unconditionally accepted a partial payment on the arrearage. He credited it as he had been doing for almost two years and did not communicate further with appellants." *Id*. The Court held that:

> We are of the opinion that the course of dealing between the parties over a period of almost two years was such that appellants had been led to believe that irregular payments would be accepted without acceleration. Under those circumstances appellee should not be permitted to foreclose on the note without first calling attention of appellants to the fact that he was insisting upon the original terms, and that no further irregular payments would be accepted. He should have afforded them an opportunity to make current any arrears, if such existed.

*Id*. at 904.

Upon review of the record, we have determined that every payment Crowe made to the Bank during a period of over three (3) years was after the 25th of the month and, according to the contract

as written, was late. However, at no time prior to repossession did the Bank refuse any of Crowe's late payments or notify Crowe that future late payments would not be accepted. In fact, the Bank accepted one of Crowe's payments on October 6, 1997, after his vehicle had been repossessed on September 29, 1997.

We are of the opinion that the course of dealing between Crowe and the Bank during a period of over three (3) years was such that Crowe had been led to believe that the Bank would accept late payments without considering Crowe in default. Furthermore, as to the insurance contract, the Bank knew that the truck was insured and that it was not listed as a loss payee, but at no time during a period of over three (3) years, did the Bank place Crowe in default for not endorsing the bank as a loss payee on the insurance policy he had on the truck. Instead, the Bank simply added their own insurance on the truck and charged it to the end of Crowe's loan. Therefore, we hold that the trial court correctly overruled the Bank's motion for directed verdict.

The second issue presented for review as stated in the Bank's brief is:

II. Whether [Crowe's] action is barred by the statute of limitations.

Again, this issue is, in essence, the alleged error of the trial court in denying the Bank's motion for a directed verdict.

In order to determine the applicable statute of limitations, we must look to the gravamen of the action. *See Yater v. Wachovia Bank of Georgia, N.A.*, 861 S.W.2d 369, 372 (Tenn. Ct. App. 1993). In determining the gravamen, or real purpose of an action, the court must look to the basis for which damages are sought. *Keller v. Colgems-EMI Music, Inc.*, 924 S.W. 2d 357, 359 (Tenn. Ct. App. 1996)(citing *Bland v. Smith*, 277 S.W.2d 377 (Tenn. 1955). Another way of stating this principle is "[t]he limitation is not determined by the form of the action but by its object." *Keller v. Colgems-EMI Music, Inc.*, 924 S.W. 2d at 359 (quoting *Bodne v. Austin*, 2 S.W.2d 100 (Tenn. 1928)).

The Bank argues that Crowe's action is barred under Tenn. Code Ann. § 28-3-104 (2000), the one-year statute of limitations for "injuries to the person." The Bank asserts that the object of Crowe's action is credit reporting damages and, therefore, is an "injury to the person" similar to defamation. However, Crowe points out that according to the specific language in the complaint, the Bank was sued for conversion and, therefore, his claim is governed by Tenn. Code Ann. § 28-3-105 (2000), the three-year statute of limitations for conversion of personal property.

After a review of the complaint filed by Crowe, we are of the opinion that the gravamen of Crowe's complaint is for conversion governed by Tenn. Code Ann. § 28-3-105. Furthermore, the trial court found that according to the complaint, conversion was Crowe's only cause of action. Therefore, we find that the trial court correctly denied the Bank's motion for directed verdict on this issue.

The third, fourth, fifth and sixth issues presented for review as stated in the Bank's brief are:

III. Whether [Crowe's] action is barred because he failed to mitigate his damages.

IV. Whether the trial court's admission of evidence of the damages claimed by [Crowe] was error because he failed to mitigate his damages.

V. Whether the trial court's admission of evidence of [Crowe's] claimed lost profits damages was error because the evidence was (1) hearsay, (2) from a witness lacking personal knowledge, and (3) speculative.

VI. Whether the trial court's admission of evidence of [Crowe's] claimed lost profits from credit reputation injury was error because such damages are not conversion damages.

These issues, in essence, emanate from the damages Crowe alleges he suffered from the loss of his truck caused by the Bank's repossession on September 29, 1997.

The law in Tennessee on loss of use damages in conversion cases can be compared to collision cases and is summarized in *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849 (Tenn. Ct. App. 1999). This Court in *Tire Shredders, Inc.* cited a number of cases discussing loss of use damages that are available when negligent conduct results in injury to personal property. *Id*. at 854. In *Tire Shredders, Inc.*, and in the collision cases discussed, the measure of loss of use damages is for a reasonable time to repair or replace the vehicle. *Id*.

For instance, in *Perkins v. Brown*, 177 S.W. 1158 (Tenn. 1915), an automobile collision case, the Tennessee Supreme Court commented that 'the owner of a vehicle held for use may recover for the loss of its use, by reason of tortious injury, while being repaired, in addition to the cost of the necessary repairs.' *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 854 (quoting *Perkins v. Brown*, 177 S.W. at 1159). In another collision case, *Smith v. Fisher*, 11 Tenn. App. 273 (Tenn. Ct. App. 1929), the trial court instructed the jury that it could award damages for the loss of use of the plaintiff's vehicle *during the time reasonably required to repair the vehicle*. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 854 (citing *Smith v. Fisher*, 11 Tenn. App. at 273) (*emphasis added*). However, the plaintiff in *Smith* did not repair his vehicle, but used it as a trade in on a new vehicle. *Id*. This Court held that because the plaintiff's vehicle was not actually repaired, loss of use damages should not have been considered when measuring the plaintiff's damages. *Id*. Furthermore, in *Yazoo & M. V. R. Co. v. Williams*, 185 S.W.2d 527 (Tenn. 1945), the plaintiff's truck was damaged in a collision with the defendant's train. *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 854 (citing *Yazoo & M. V. R. Co. v. Williams*, 185 S.W.2d at 528). The trial court instructed the jury that, "if it found in favor of the plaintiff, the measure of damages was the cost of repairing the truck *plus the value of the use of the truck during the period of time that would reasonably be required to obtain the necessary repairs.*" *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 854 (citing *Yazoo & M. V. R. Co. v.*

*Williams*, 185 S.W.2d at 529)(*emphasis added*).  After noting that the truck had not been repaired, the Court held that the proper measure of damages did not include loss of use damages.  *Id*.

Therefore, "permitting the recovery for loss of use during a period necessary to replace an injured or destroyed chattel would be consistent with Tennessee decisions in contract cases involving loss of use." *Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 854 (quoting Mayo L. Coiner, Tennessee Law of Damages § 6-4 (1988)).

This Court, in *Tire Shredders*, also upheld the following jury instruction which we are of the opinion represents the law in Tennessee on loss of use damages:

> The measure of damages for loss of use is reasonable compensation to the plaintiff for being deprived of the use of the property during the time reasonably necessary for a reasonably prudent person to replace the property. . . .

*Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d at 853.  Furthermore, the trial court in the present case properly gave the following instruction to the jury:

> A person whose property has been damaged by the wrongful act of another is bound to use reasonable care to avoid and minimize damages.  A party may not recover for losses that could have been prevented with reasonable efforts or by expenditures that might reasonably have been made.

In addition to loss of use damages, these issues also involve a determination of damages for conversion of property.  The law in Tennessee on conversion damages is as follows:

> As a general rule, plaintiff's damages in an action for conversion are measured by the sum necessary to compensate him for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. However consequential damages must be proved with reasonable certainty.  The ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest.  If special damages are pleaded and proved, plaintiff may recover for all injuries or losses sustained as a proximate result of the conversion, but there can be no recovery for losses or injuries which are too remote or uncertain, or which the plaintiff could have avoided by the exercise of ordinary diligence.
>
> *   *   *
>
> While it has been held absolutely that injuries to business are not recoverable as damages in trover, and there can be no recovery for

-7-

loss of profits or injuries to businesses of a speculative or uncertain nature, it is often held that there can be a recovery for such losses if they are shown with certainty, except in so far as such losses could have been avoided or minimized by the exercise of due diligence on the part of the plaintiff. (citation omitted).

*   *   *

Damages for conversion of a vehicle are comparable to damages for loss or loss of a vehicle by negligence as in a collision. In such cases, the rule is that, where no other vehicle is available, lost profits may be recovered if proved with certainty, but an award of lost profits is erroneous in the absence of a showing that no other vehicle could be had. There is no evidence of the unavailability of another vehicle except lack of funds which is not recognized as an exception to the duty to mitigate damages by obtaining another vehicle.

*Lance Productions v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988)(citation omitted).

The Bank argues that Crowe's claim for conversion damages is barred because Crowe should have exercised ordinary diligence by making his payments to the Bank on time which would have prevented the Bank from repossessing his truck. We must disagree. As we stated earlier in this opinion, the Bank's course of dealing with Crowe over three (3) years led him to believe that late payments would be accepted. Therefore, we are of the opinion that the trial court correctly denied the Bank's motion for a directed verdict.

The Bank argues, in the alternative, that even if Crowe's claim is not barred for failure to mitigate his damages, he cannot recover for damages that 'could have been avoided or minimized by the exercise of due diligence on the part of the plaintiff.' The Bank specifically mentions in its brief that Crowe's air travel and rental car expenses, as well as his lost profit damages, are the damages that Crowe failed to mitigate and the Bank's position is that the trial court erred in admitting evidence of these damages.

Tenn.R.Evid. 103 provides in pertinent part:

**Rule 103. Rulings on evidence.** - (a) Effect of Erroneous Ruling. - Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. - In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context; . . . .

-8-

Furthermore, "a litigant who files an unsuccessful motion in limine need not also make another objection when the evidence is introduced in order to preserve an evidentiary issue for appellate review *as long as the trial court has 'clearly and definitively' disposed of the motion in limine*." **Wright v. United Servs. Auto. Assoc.**, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990)(quoting **State v. McGhee**, 746 S.W.2d 460, 462 (Tenn. 1988)(*emphasis added*)). However, if the trial court has not "clearly and definitively" acted on the motion, the moving party must renew the motion contemporaneously with the introduction of the objectionable evidence. **Grandstaff v. Hawks**, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000). Failure to renew the motion will preclude the moving party from taking issue on appeal with the admission of the evidence. **Id**.

In the instant case, the Bank alleges that the trial court's erroneous action which raised this issue was its denial of the Bank's motion in limine number 4 which provides as follows:

> Defendant moves the Court to exclude (1) argument for and statements about plaintiff's claim for damages and (2) evidence the sole purpose of which is to support that claim.
>
> Plaintiff failed to mitigate his damages by replacing the repossessed truck. Plaintiff was unable to buy a replacement truck due to lack of funds. Plaintiff's deposition at 88. A claim of "lack of funds" is not a recognized exception to the duty to mitigate damages for obtaining another vehicle. Lance Productions, Inc. v. Commerce Union Bank, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988).
>
> The Court should grant this motion because such arguments, statements and evidence would be irrelevant and unfairly prejudicial.

However, the record does not reflect that the trial court entered a written order on this motion. Furthermore, the Bank argued this motion in limine preliminarily before the trial court as follows:

> MR. ROWLETT: Your Honor, motion in limine No. 4. Mr. Crowe had this truck repossessed and he was unable to buy a replacement due to lack of funds and there is a case that we cited on that that (sic) said lack of funds is not a recognized exception to the duty to mitigate so any damages that Mr. Crowe claims due to his inability to buy a replacement truck due to lack of funds should not be admissible in evidence.
>
> MR. ABERNATHY: Your Honor, I think what the Lance case says among other things is if someone finds themselves in the position of Mr. Crowe has (sic) certain responsibilities to undertake. They even talked about in the Lance case had (sic) some responsibility to try to go to Court to get the repoed vehicle back.

The court is going to hear proof and I think the Court should hear proof about what this man did after the bank took his truck, and I think the Court will clearly find that he did all that was required of any reasonable person to mitigate his loss. Matter of fact, he did all any reasonable person could do to persuade the bank that they had made a mistake. He was unsuccessful in doing that.

The trial court made the following comment on the Bank's motion in limine number 4:

THE COURT: All right. The Court will charge, of course, the standard and mitigation damages.

We do not find a clear and definitive ruling on the Bank's motion in limine number 4 which, in essence, addresses the introduction of evidence on Crowe's air travel and rental car expenses allegedly suffered by Crowe as a result of the Bank's conversion. Furthermore, the Bank does not direct this Court to the location, and we do not find in the record, where the Bank made an objection to Crowe's testimony that the total amount of car rental and airline expenses he incurred as a result of not having his truck was $20,945.81. In the absence of a clear and definitive ruling on the Bank's motion in limine and in the absence of a timely objection by the Bank to the evidence introduced, this Court cannot consider the alleged error. This issue is without merit.

The Bank further contends that the trial court erred in admitting evidence of Crowe's alleged lost profit damages because the testimony was either hearsay, from a witness lacking personal knowledge and speculative. During the direct examination of Mr. Crowe, the trial court overruled the Bank's objection on this issue as follows:

Q. Mr. Crowe, you've alleged in your complaint that as a result of this repossession you've lost revenue, you've lost contracts?

A. Yes, sir.

Q. Is that true?

A. That's true.

MR. ROWLETT: Your Honor, I'd just like to note a continuing objection on the lost contracts because Mr. Crowe doesn't have personal knowledge of why he didn't get any of those contracts.

THE COURT: All right, sir. Be overruled.

When reviewing a trial court's decision to admit evidence, we must remember that the trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *Otis v.*

*Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995). The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

Crowe testified at trial that his damages, as a result of the Bank's repossession and conversion of his truck, include anticipated lost profits from six (6) competitively bid job contracts worth between 15 and 20 percent of the total job amount. However, Crowe testified on cross-examination as follows:

> Q. An you've testified about – let me just ask you a question about these. You testified, I think, about this job, this Nelson Poultry job and you indicated that you would have a 15 percent net profit; is that right?
>
> A. Yes, sir.
>
> Q. And that's just what you anticipated, correct?
>
> A. Yes, sir.
>
> *   *   *
>
> Q. And on this Mahard Egg Farm job, you didn't even submit a bid on that job, did you?
>
> A. We had our bid all made out and the estimator had it.
>
> Q. My question to you, though, was you did not submit a bid on that job, did you?
>
> A. Not directly to Mahard. Like I said, the bid estimator had it.
>
> Q. And what you've written here says by way of estimation, I probably lost the opportunity to bid; is that correct?
>
> A. Well, I did lose the opportunity to carry it further.
>
> Q. And you've testified that you think that your profit would have been – net profit would have been 15 percent?

-11-

A. That's right, of the total contract.

Q. And if the total contract was a million, you think your net profit would have been $150,000?

A. That's what the contract would have been.

* * *

Q. And isn't it true that on these jobs that you've referred to earlier with Mr. Abernathy, that there were at least three other jobs where you did not – had not submitted a bid?

A. Couldn't get the bonding. No need to doing all the paperwork.

According to Crowe's own testimony, we find no material evidence of Crowe's lost profit damages. It is uncertain that Crowe would have received the job contracts even if the bank had not repossessed his truck. In fact, Crowe testified that he did not even submit a bid on four (4) of the six (6) job contracts on which he claims damages. Crowe's testimony as to lost profits is speculative and uncertain and, therefore, we are of the opinion that the trial court abused its discretion when it overruled the Bank's objections on this issue.

The Bank also argues that the trial court erred in admitting evidence of Crowe's claimed lost profits from credit reputation injury because such damages are not conversion damages. The trial court overruled the Bank's objections to Crowe's testimony regarding the adverse effect the repossession had on Crowe's business including his testimony that he lost contracts because of the repossession.

In sum, Crowe testified at trial that the damage to his credit reputation, resulting from the Bank reporting the repossession to credit bureaus, prevented Crowe from obtaining the bonding and insurance necessary to receive the job contracts on which he claims damages.

We find that even if Crowe would have been able to obtain the bonding and insurance, there is still nothing to indicate that he would have received the job contracts. Crowe's testimony on direct examination that "[I] [n]ever did go to get one [job contract] that I didn't get if I wanted it" and "[i]f I wanted the job, I come home with it", is uncertain and speculative. Therefore, because Crowe's lost profit damages are uncertain and speculative, we find that the trial court abused its discretion when it allowed Crowe's testimony of lost profits based on credit reputation injury.

The seventh issue in this case is pretermitted.

The judgment of the trial court that Bank was guilty of conversion is affirmed. The judgment is modified to award plaintiff total damages as proven in the amount of $20,945.80. The case is remanded to the trial court for such further proceedings as necessary. Costs of appeal are assessed one-half against appellant, First American National Bank, and its surety, and one-half against appellee, Richard Crowe.

-12-

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.