IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

January 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

DR. ELENORA WOODS,            )     HAMILTON CHANCERY
                             )     C.A. NO. 03A01-9803-CH-00085
                             )
        Plaintiff-Appellant  )
                             )
                             )
                             )
vs.                          )
                             )     HON. HOWELL N. PEOPLES
                             )     CHANCELLOR
                             )
HERMAN WALLDORF & COMPANY,    )
INC., and C. HSIUNG CHEN AND  )
LANA CHEN, individually and   )
d/b/a HIGHWAY 58 COMMONS,      )     AFFIRMED IN PART
                             )     REVERSED IN PART
        Defendants-Appellees  )     REMANDED


CATHERINE M. WHITE, Chattanooga, for Appellant.


JENNIFER H. LAWRENCE, ERIC J. OLIVER, Lawrence, Lawrence & Gerbitz,
PLLC, Chattanooga, for Appellees C. Hsiung Chen and Lana Chen.


JAMES R. BUCKNER, MARCIA EASON, Miller & Martin, LLP, Chattanooga,
for Appellee Herman Walldorf & Co.


O P I N I O N


                                        McMurray, J.


        This action, brought under the Tennessee Human Rights Act,

T.C.A. § 4-21-101 et seq., is one for alleged racial and sexual

discrimination.  The plaintiff, Dr. Elenora Woods, sued C. Hsiung

Chen and Lana Chen, owners of an office complex in Chattanooga, and Herman Walldorf & Company, the Chens' leasing agent, alleging that the defendants failed to negotiate a commercial lease agreement in good faith because of her race and/or gender. The plaintiff also brought a claim of fraudulent inducement against the defendants Chen. The case was tried before a jury, which returned a verdict for the defendants. The trial court awarded the defendants their costs for court reporter's fees in the total amount of $7,288.76, under Rule 68 of the Tennessee Rules of Civil Procedure. The court also awarded the defendants discretionary costs totalling $2,752.75 under Rule 54 of the Tennessee Rules of Civil Procedure. The plaintiff appeals. We reverse the trial court's award of court reporter's fees under T.R.Civ.P. 68, and affirm the remainder of the court's judgment.

The plaintiff raises the following issues for our review:

1. Whether there is material evidence to support the verdict.

2. Whether the chancellor properly exercised his function as the thirteenth juror.

3. Whether the jury pool was impermissably deficient in potential black jurors.

4. Whether the court erred in permitting the defendants to peremptorily challenge a potential black female juror, removing her from the venire.

5. Whether the court erred in permitting counsel for the Chens to engage in "runaway cross-examination" beyond the scope of Rules 602 and 611 of the Tennessee Rules of Evidence.

2

6. Whether the court erred in failing to give jury instructions requested by plaintiff regarding her discrimination claims.

7. Whether the court erred in granting the defendants' motion for costs.

Defendant Herman Walldorf & Company raises the following additional issue:

8. Whether the court erred in failing to grant defendant's motion to dismiss for failure to state a claim under the Tennessee Human Rights Act.

The relevant facts are as follows. The plaintiff is an African-American female dentist. On May 14, 1993, plaintiff signed a thirty-six month lease for an office suite in the complex at issue. The lease was negotiated by Cindi Dolberry, the Chens' leasing agent at that time. During the negotiation, plaintiff told Dolberry that she wanted only a one-year lease because she was concerned that her business might grow to the point where she would need more office space. Plaintiff also advised Dolberry that the office space would have to be renovated and new plumbing installed so she could use it as a dental office. Dolberry told plaintiff that Mr. Chen would pay for both the renovation "build-out" expenses and the plumbing, but that since he could not recoup these expenses in one year, she would have to sign a three-year lease.

The plaintiff then inquired whether she would be able to move to a larger office space in the same complex during the three-year

period if she outgrew her initial space.  Dolberry answered in the affirmative, indicating that plaintiff would be able to negotiate for a bigger suite during the three years without breaking her lease.  Plaintiff signed the three-year lease.  The lease did not include a provision addressing a potential move by plaintiff during the term.  The rent was $625 per month, which Mr. Chen testified was $60 less than what the prior tenant had paid for the suite.

Apparently, neither Dolberry nor Chen realized that the plaintiff required special dental plumbing for her office, which cost substantially more to install than normal plumbing.  When the plumbing bill for plaintiff's office came due, Chen refused to pay it, taking the position that he had not agreed to provide special dental plumbing.  The plaintiff likewise refused to pay the bill, citing Dolberry's agreement to pay for the build-out, including plumbing.  The plumbing contractor sued Chen, Dolberry and the plaintiff for the bill.

In January 1994, Bryant Gilbreath, an employee of Herman Waldorf & Company, assumed the leasing responsibility for the office complex.  In March 1994, ten months into her lease and eight months after she began paying rent, and while the plumbing litigation was still ensuing, plaintiff approached Gilbreath and informed him she wanted to move to a bigger space.[1]  Through

_____

[1]Apparently plaintiff was not required to pay rent for the first two months because the office suite was not ready for her to move in during those months.

4

Gilbreath, Chen responded that he did not want to negotiate a move until the plumbing litigation was settled.  On March 29, 1994, a judgment was entered against Chen for the amount of the plumbing bill.

On March 31, 1994, the plaintiff called Gilbreath, advised him that the plumbing litigation had reached a resolution, and reiterated her desire to move to a larger office suite.  According to the plaintiff, Gilbreath told her that she would have to reimburse Chen for the build-out costs, including the plumbing, and also pay a penalty of the remainder of the rent under her three-year agreement, in order to move.  Gilbreath testified that he told her Chen required her to reimburse him for the build-out costs he had incurred with her office suite, because she had been in the suite less than a year and Chen had not been able to recoup these expenses as planned.  Gilbreath denied telling the plaintiff that she would have to pay a penalty of additional rent.  The plaintiff expressed her dissatisfaction with the build-out recoupment requirement, and accused Gilbreath and Chen of discriminating against her.

On April 5, 1994, the plaintiff sent Gilbreath an offer letter in which she offered "$847 per month with all existing plumbing intact" for the larger office suite.  The $847 figure was what she understood the prior tenant, Dr. Cowart (also a dentist), had been

5

paying in rent. According to Chen's testimony, Cowart was actually paying $871 plus taxes and insurance.

According to all of the testimony, the parties could not reach agreement on Chen's request that the plaintiff reimburse him for the build-out costs in order to move. On May 2, 1994, the plaintiff sent Gilbreath a letter which states in relevant part:

> This letter is written to confirm our telephone conversation on APRIL 14, 1994. You, Mr. Gilbreath stated that I cannot move to Suite 104 unless I paid Mr. Chen the cost he incurred for the suite I am presently leasing, Suite 109-A. As I stated in our telephone conversation, Mr. Chen was ordered by the court to pay the expenses he incurred from the plumbing put in Office Suite 109-A.

The plaintiff, considering the reimbursement requirement unreasonable, refused to agree to it. Chen, concerned with the fact that he had paid over $6,300 in build-out expenses, including special plumbing, which he had not recouped during the plaintiff's eight months of paying rent, would not agree to allow the plaintiff's move without recovering this expense. Consequently, the plaintiff stayed in her original office suite for the remainder of her lease. Although Chen testified that "a lot" of people were interested in, and negotiating over, the larger space which the plaintiff had wanted, it remained vacant during the duration of the plaintiff's lease.

6

The plaintiff filed her complaint alleging unlawful discrimination and fraudulent inducement on March 17, 1995. The jury returned a verdict in favor of defendants on all issues. This appeal ensued.

**APPLICABILITY OF THE THRA**

We first address Herman Walldorf & Company's assertion that the trial court erred in denying its motion to dismiss for failure to state a claim because the Tennessee Human Rights Act (THRA) does not apply to commercial real estate transactions. The THRA provides in relevant part as follows:

> **4-21-601. Discriminatory Housing Practices Generally.**—(a) It is a discriminatory practice for any person because of race, color, creed, religion, sex, handicap, familial status or national origin, to:
>
> (1) Refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, real property or a housing accommodation to a person;
>
> (2) Discriminate against any person in the terms, conditions, or privileges of sale or rental of real property or a housing accommodation, or in the provision of services or facilities in connection therewith;
>
> (3) Refuse to receive or transmit a bona fide offer to purchase, rent or lease real property or a housing accommodation from a person;

T.C.A. § 4-21-601 (1998 repl.).

In its argument, the defendant focuses on the definition of "housing accommodation" found at T.C.A. § 4-21-102(11). The

7

defendant correctly notes that a commercial lease does not fall within this definition, which includes property "which is used or occupied ... as the home or residence of one (1) or more individuals." Id. However, as the trial court noted, the statute plainly prohibits discrimination with regard to housing accommodations or real property. "Real property" is broadly defined at T.C.A. § 4-21-102(19) as including "buildings, structures, real estate, lands, tenements, leaseholds, cooperatives, condominiums, and heriditaments, corporeal and incorporeal, or any interest in the above." Id. A commercial lease such as the one at issue here clearly falls within the plain language of this definition.

The defendant argues in its brief that:

> Claims for discrimination in commercial leases fall within the prohibition on discrimination established by the Civil Rights Act of 1866, which is codified at 42 U.S.C. §§ 1981-1982. Cho v. Itco, Inc., 782 F.Supp. 1186, (E.D. Texas 1992). The THRA specifically embraces several federal laws, but the Civil Rights Act of 1866 is not one of those Acts. See Tenn. Code Ann. § 4-21-101(a)(1).

T.C.A. § 4-21-101(a)(1) states that "[i]t is the purpose and intent of the general assembly by this chapter to: (1) [p]rovide for execution within Tennessee of the policies embodied in the Federal Civil Rights Acts of 1964, 1968 and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended." It is true that this general provision does not

8

mention the Civil Rights Act of 1866, but this omission cannot be construed to negate the plain and clear words of the statute. If the general assembly had wished to exclude commercial leaseholds, or other commercial transactions, from the THRA, it seems reasonable that it would not have so plainly included them within the broad definition of "real estate." The trial court did not err by refusing to grant defendant's motion to dismiss for failure to state a claim under the THRA.

## <u>MATERIAL EVIDENCE & THIRTEENTH JUROR</u>

The plaintiff raises the issues of whether the jury verdict was supported by material evidence, and whether the trial judge properly exercised his function as the thirteenth juror. Because the material evidence rule and the thirteenth juror rule are somewhat interrelated, as noted by this court in <u>Shivers v. Ramsey</u>, 937 S.W.2d 945 (Tenn. App. 1996), we will consider them together:

> We first note that our standard of review is limited to a determination of whether there is any material evidence to support a jury verdict. See Rule 13(d), Tennessee Rules of Appellate Procedure. We would further point out, however, that this standard is not applicable unless the trial judge properly fulfills his duty as a "thirteenth juror." In this state the trial judge is the thirteenth juror and no verdict is valid until approved by the trial judge. <u>Mize v. Skeen</u>, 63 Tenn. App. 37, 468 S.W.2d 733 (1971). In this capacity the trial judge is under a duty to independently weigh the evidence and determine whether the evidence preponderates in favor of or against the verdict. <u>McLaughlin v. Broyles</u>, 36 Tenn. App. 391, 255 S.W.2d 1020 (1952); <u>Tiffany v. Shipley</u>, 25 Tenn.App. 539, 161 S.W.2d 373 (1941).

9

> If in discharging his duty as thirteenth juror, the trial judge makes comments that indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial [the material evidence rule notwithstanding]. See Nashville, C. & St. L.R.R. v. Neely, 102 Tenn. 700, 52 S.W. 167, 168 (Tenn. 1899); Holden v. Rannick, 682 S.W.2d 903 (Tenn. 1984).

Shivers, 937 S.W.2d at 947.

The plaintiff argues that the chancellor's comments in his order denying her motion for a new trial indicate that he did not properly weigh the evidence as thirteenth juror. The court's comments in this regard are as follows:

> The weight of the evidence in this case established that the refusal to enter into a lease with the plaintiff was based on economics and "greed" rather than the plaintiff's race. Plaintiff offered evidence of her economic loss that obviously was exaggerated and her testimony on key particulars was contradicted at times by her discovery responses. There was also a strong inference that some of her fact witnesses had been compensated for their testimony. The evidence did not establish that the reason for the rejection of plaintiff's offer to lease was discriminatory. As to the plaintiff's claim of intentional misrepresentation or fraudulent inducement, the testimony of Cindy [sic] Dolberry, agent of Chen, established that plaintiff was promised only that she could move to other vacant space in the complex upon an agreed rental rate. There was no proof that plaintiff was promised anything that was not, in fact, available to her. The verdict of the jury was not contrary to the weight of the evidence. The Court concurs completely and without reservations in the verdict of the jury. [emphasis added].

We find nothing in the chancellor's order, or the remainder of the record, that indicates he did not independently and properly

10

weigh the evidence and determine that the evidence preponderated in favor of the jury's verdict.

Because we find that the chancellor properly exercised his role as thirteenth juror, we will next examine the record to determine if there is any material evidence to support the jury verdict. T.R.A.P. 13(d). Much of the argument in the plaintiff's brief on this issue appears to be an attempt to persuade us to weigh the evidence, which we cannot do when presented with a properly approved jury verdict. Loeffler v. Kjellgren, 884 S.W.2d 463, 469 (Tenn. App. 1994); Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4, 5 (Tenn. 1978).

Taking the strongest legitimate view of all the evidence in favor of the verdict, as we are required to do under a material evidence standard, Crabtree, 575 S.W.2d at 5, we find ample evidence to support the verdict. The resolution of this case was very heavily dependent on the credibility of the various witnesses. For example, the plaintiff testified that when she met with Chen regarding the plumbing bill controversy, he became verbally abusive and called her a "nigger." Chen denied this, and vehemently denied that the plaintiff's race or gender had any effect on his decision not to allow her to lease another office suite.

11

At trial and on appeal, the plaintiff emphasizes the fact that Cowart, a white male dentist, was allowed to change office suites and she was not. However, the record is full of evidence that the two were dissimilarly situated with regard to how long each had been in the office complex, and how much rent each had paid. Specifically, Chen testified that Cowart had rented his previous space for approximately five years before he changed suites, and that he had recouped his build-out expenses for Cowart's suite. Also, the plaintiff had been involved in recent and contentious litigation regarding her lease, and Cowart had no history of litigation against Chen. Based on the evidence, the jury could readily have believed and credited Chen's testimony that his refusal to allow the plaintiff to move was based on economic reasons. The plaintiff explicitly recognizes this when she notes in her brief: "[o]f course, the defendants offered legitimate nondiscriminatory reasons for why Dr. Cowart was allowed to move and Dr. Woods was not."

Regarding the plaintiff's fraudulent inducement claim, it was undisputed that Dolberry told the plaintiff that she would possibly be able to move before her lease expired, but that the terms of the move would be negotiable at that time. As we have noted, there is material evidence supporting the conclusion that the defendants did negotiate with the plaintiff in good faith; they simply reached an impasse in the negotiations on whether the plaintiff would be

12

required to reimburse Chen for his build-out expenses. There is no evidence that Dolberry made any misleading or false statements in order to induce the plaintiff to sign the lease. The plaintiff's first and second issues are without merit.

## JURY SELECTION

The plaintiff challenges the venire composition, alleging that it did not represent a fair cross-section of the community and that black persons were underrepresented on the venire in this case. Parties are constitutionally entitled to a venire which represents a fair cross-section of the community. Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); State v. Evans, 838 S.W.2d 185, 192 (Tenn. 1992); State v. Bell, 745 S.W.2d 858, 860 (Tenn. 1988); State v. Thompson, 768 S.W.2d 239, 246 (Tenn. 1989).

In order to establish a prima facie violation of the fair cross-section requirement, the challenging party must show: (1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process. Evans, 838 S.W.2d at 192; Thompson, 768 S.W.2d at 246; Bell, 745 S.W.2d at 860; Cooper v. State, 847 S.W.2d 521, 533 (Tenn. Cr. App. 1992). In this case, the plaintiff made no attempt

13

at trial to demonstrate the second and third prongs of the test; in fact, she did not object to the composition of the venire at all until after the jury verdict. The plaintiff has not met her burden of proof on this issue.

The plaintiff next argues that the trial court erred in permitting a peremptory strike of a black female potential juror from the venire. Although the plaintiff objected at the time of the peremptory challenge, she did not raise this issue in her motion for a new trial. Rule 3(e) of the Tennessee Rules of Appellate Procedure states that:

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived.

Under this rule we would be justified in treating this issue as waived; however, we believe it is of sufficient importance to the administration of justice to address it. See Rule 2, Tennessee Rules of Appellate Procedure.

The plaintiff did bring this issue to the trial court's attention during jury selection, which led to a Batson hearing. Moreover, both the United States Supreme Court and Tennessee

14

Supreme Court have noted that the issue of discrimination in jury selection has profound implications for the entire judicial process:

> Since as early as 1880, it has consistently been recognized that racially-based juror exclusions affect and injure the integrity of the justice system ... More recently, in a series of cases, the United States Supreme Court has recognized that the injury inherent in discriminatory juror selection taints the judicial process and "extends beyond that inflicted on the [litigant] and the excluded juror to touch the entire community." Batson v. Kentucky, 476 U.S. 79, 87, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69 (1986). The exclusion "undermine[s] public confidence in the fairness of our system of justice."

Woodson v. Porter Brown Limestone Co., Inc., 916 S.W.2d 896, 902 (Tenn. 1996). [Brackets in original].

The Woodson court engaged in a thorough review and analysis and provided the following guidance for proceeding with an objection based on alleged discriminatory juror selection:

> Once an objection is voiced, the court should require the objecting party to detail how a prima facie case of purposeful discrimination has been established. The Judge should state clearly on the record, outside the jury's presence, the facts relied upon for finding the presence or absence of a prima facie showing.
>
>        *     *     *     *
>
> If the court finds that a prima facie case has been established, the court must give the opposing party the opportunity to rebut the prima facie case by establishing a neutral reason for the exercise of the challenge. The objecting party must be allowed to respond as to why the reason is pretextual or inadequate. Thereafter, the court must determine, by considering all the facts and

15

circumstances, whether the totality of the circumstances support a finding of purposeful discrimination.  "The ... ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike."

Woodson, 916 S.W.2d at 904, 906. [Citation and footnote omitted].

In this case, upon the plaintiff's objection to defendant's peremptory strike of a black female potential juror, the court conducted a Batson hearing out of the venire's presence.  The entire hearing transpired as follows:

THE COURT:  All right. Ms. White, you wanted to be heard on the matter of Ms. Wooten's challenge.

[PLAINTIFF'S COUNSEL]: Basically, Your Honor, I did not detect any questions that she answered that would indicate any type of problem with her being impartial, and it would appear it was just her race.

THE COURT:  Do you have any evidence that it was racially motivated?

[PLAINTIFF'S COUNSEL]:  No, sir, I don't, except that this case is about race.

[DEFENDANT'S COUNSEL]:  Notwithstanding what her burden is, my reason for striking Ms. Wooten was her connection with the medical field.  She worked at Vencor and she works at a nursing home, and my gut feeling is that she may be more sympathetic to someone in the medical profession.

THE COURT:  All right.

[PLAINTIFF'S COUNSEL]:  That's all.

THE COURT:  All right.  You can be excused if you want to go to the rest room.

16

The court excused the challenged prospective juror, the jury was selected and sworn, and the trial continued, all without further objection.

Our Supreme Court has clearly held that "the exercise of even one peremptory challenge in a purposefully discriminatory manner would violate equal protection." State v. Ellison, 841 S.W.2d 824, 827 (Tenn. 1992); accord State v. Graham, 1998 WL 226091, No. 03C01-9707-CC-00314 (Tenn. Cr. App. May 7, 1998). Here, the plaintiff presented no evidence to the court supporting her theory of purposeful discrimination other than the fact that the prospective juror was of the same race as the plaintiff. Our research indicates a difference of opinion among Tennessee courts on the issue of whether, under these circumstances, the plaintiff has presented a prima facie case of a discriminatory challenge.

Several courts have held that, "[s]tanding alone, the fact that [a party] challenged the only potential black juror on the panel does not establish a prima facie showing of purposeful discrimination." State v. Krantz, 1998 WL 3621, No. 01C01-9406-CR-00207 (Tenn. Cr. App. Jan. 7, 1998); State v. Malone, 1997 WL 124250 (Tenn. Cr. App. March 20, 1997) ("We do not believe this incident [peremptory removal of one African-American from the jury pool], standing alone, is sufficient to make out a prima facie case of discrimination ... ."); State v. Porter, 1997 WL 399335, No.

17

02C01-9501-CC-00029 (Tenn. Cr. App. July 16, 1997), perm. app. granted March 3, 1998 ("We do not believe that the State's peremptory removal of one African-American from the jury pool, standing alone, is sufficient to make out a prima facie case of discrimination.").

However, the Supreme Court provided the following guidance on this issue in the case of State v. Ellison:

> First, even though only one member of the venire in this case belonged to a "cognizable racial group," this fortuity does not prevent the defendant from establishing a prima facie case of purposeful discrimination. In light of the United States Supreme Court's admonition against the use of "peremptory challenges as a mask for race prejudice," Powers [v. Ohio], ___ U.S. at ___, 111 S.Ct. at 1374, we conclude that the exercise of even one peremptory challenge in a purposefully discriminatory manner would violate equal protection.
>
> Moreover, "[j]ury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people." Powers, ___ U.S. at ___, 111 S.Ct. at 1369. Recognizing this policy consideration, the Supreme Courts of Wisconsin and Arizona have held that a prima facie case of racial discrimination can be established where the prosecutor uses a peremptory challenge to strike the only black member of the venire. [citations omitted] The United States Court of Appeals for the Eleventh Circuit has reached the same conclusion. [citation omitted].
>
> Finding that the exclusion of one minority venire person can constitute a prima facie case is consistent with the principle set out in Batson.

Ellison, 841 S.W.2d at 827.

18

We are of the opinion that, under Ellison, the plaintiff has made out a prima facie case, requiring the defendant to respond with a race-neutral reason for the challenge. In this case, defendant provided such a reason: the prospective juror's connection to the medical field. At the hearing, the plaintiff presented no rebuttal argument tending to show this reason was pretextual.[2]

The Ellison court noted that "[b]ecause the core issue is the prosecutor's discriminatory intent, or lack thereof, the trial court's finding 'largely will turn on evaluation of credibility.'" Id. at 827. Thus, "[o]n appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous." Woodson, 916 S.W.2d at 906. Here, the trial court clearly credited defendant's neutral explanation for the peremptory challenge. We also note in passing that another African-American venire member was not challenged by the defendants, and he served on the jury. We defer to the trial court's finding on this issue and do not find it clearly erroneous.

## "RUNAWAY CROSS-EXAMINATION"

At trial, the plaintiff called Chen as a witness during her case in chief. She complains that Chen's counsel engaged in

---

[2]On appeal, in her brief, the plaintiff argues that three other prospective jurors who had similar connections to the medical profession were not challenged. This was not pointed out to the court during the hearing.

19

"runaway cross-examination" beyond that contemplated by Rules 602 and 611 of the Tennessee Rules of Evidence.

It is well-settled in Tennessee that "The propriety, scope, manner, and control of the examination of witnesses is a matter within the discretion of the trial judge, which will not be interfered with in the absence of an abuse thereof. A wide discretion in this matter is necessarily left to the court." Coffee v. State, 216 S.W.2d 702, 703 (Tenn. 1948). Consequently, "the determination of the propriety of questions on cross-examination is very largely in the discretion of the trial court, subject, of course, to correction for plain error or evident abuse of discretion." Davis v. Wicker, 333 S.W.2d 921, 923 (Tenn. 1960).

We have carefully reviewed the transcript of Chen's cross-examination by his own counsel. It is apparent that the trial court kept control of the proceedings and did not allow any unfair or improper questioning. We believe that it would only serve to unduly lengthen this opinion to include all of the questions and testimony to which the plaintiff has objected. Suffice it to say that the court did not abuse its wide discretion in allowing cross-examination of Chen.

## JURY INSTRUCTIONS

20

The plaintiff contends that the trial court erred by failing to give the jury adequate instruction on the defendants' obligation to negotiate with her in good faith. Under Tennessee law, we review the jury charge in its entirety and consider it as a whole in order to determine whether the trial court committed prejudicial error. "The charge will not be invalidated as long as it fairly defines the legal issues involved in the case and does not mislead the jury." Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 446 (Tenn. 1992).

Having reviewed the trial court's jury instructions as a whole, we find that they did fairly define the legal issues and were not potentially misleading to the jury. The jury instructions substantially and closely tracked the language of the THRA. The court charged the jury in this regard as follows:

> It is a discriminatory practice for any person because of race or sex to, one, refuse to sell or rent after the making of a bona fide offer or to refuse to negotiate for the sale or rental or otherwise make unavailable or deny real property or housing accommodation to any person; two, discriminate against any person in the terms, conditions or privileges of sale or rental of real property or housing accommodation, or in the provision of services or facilities on connection therewith; three, refuse to receive or transmit a bona fide offer to purchase, rent or lease real property or a housing accommodation for a person.

The trial court, after instructing that a refusal "to receive or transmit a bona fide offer" is a discriminatory practice, defined "bona fide" as meaning "good faith, honestly, and without

21

attempting to seek an unfair advantage." The court also charged that:

> a bona fide offer is a proposal that is made in good faith and is appropriate under the circumstances. An offer that attempts to take advantage of another or is below reasonable market value is not bona fide.

We are of the opinion that the instructions fairly charge and convey to the jury the defendant's duty to negotiate in good faith.

## AWARD OF COSTS UNDER RULE 68

At the close of trial, the defendants requested an award of costs under Rules 54 and 68 of the Tennessee Rules of Civil Procedure. The court ruled as follows in its order responding to the plaintiff's motion for a new trial:

> Walldorf seeks to recover from the plaintiff, pursuant to Rules 54 and 68 of the Tennessee Rules of Civil Procedure, certain deposition expenses and expenses of litigation. In support of the Motion, Walldorf submits (1) an Offer of Judgment made by both Walldorf and Chen on February 27, 1997, to allow plaintiff to take a judgment in the amount of $20,000 and costs then accrued in this action, and (2) the Judgment entered October 7, 1997, after trial, that plaintiff take nothing and the action be dismissed with prejudice. Rule 54 allows, at the Court's discretion, the recovery of "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees ... and guardian ad litem fees." Rule 68 provides that if the judgment finally obtained is less than that offered, the "offeree <u>shall</u> pay all costs accruing after the making of the offer." [emphasis in original]. Walldorf is entitled to recovery under Rule 68 of court reporter charges incurred after February 27, 1997, in the amount of $3,268.13. The Court will also grant Walldorf

22

discretionary costs, pursuant to Rule 54, in the amount of $1,769.59. The other expenses, which Walldorf seeks to recover, are not allowed by the Rules.

Chen also seeks to recover costs pursuant to Rules 54 and 68. The court finds that Chen is entitled to recover, pursuant to Rule 68, court reporter charges incurred after February 27, 1997, in the amount of $4,020.63. The Court finds under the facts of this case that it is also appropriate that Chen recover discretionary costs, pursuant to Rule 54, in the amount of $983.16 for court reporter charges incurred before the Offer of Judgment. The other expenses, which Chen seeks to recover, are not allowed by the Rules.

On appeal, the plaintiff argues that the court erred by awarding costs against her. We agree that the award of costs under Rule 68 was improper. In Person v. Fletcher, 582 S.W.2d 765 (Tenn. App. 1979), this court held that "costs" as referred to in Rule 68 included only "the costs taxed by the Clerk of the Court in passing upon an application for costs under Rule 68." Id. at p. 766. The Person court rejected an argument that "costs" under Rule 68 included court reporter's fees. Id. The court's award of costs under Rule 54 was within its sound discretion and not an abuse of that discretion.

The award of costs to each defendant under Rule 68, totalling $7,288.76, is reversed, and the remainder of the trial court's judgment is affirmed. Costs on appeal are taxed equally among the appellant, appellee Chen, and appellee, Herman Walldorf & Company.

_____
Don T. McMurray, Judge

23

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Herschel P. Franks, Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

DR. ELENORA WOODS,              )    HAMILTON CHANCERY
                                )    C.A. NO. 03A01-9803-CH-00085
                                )
          Plaintiff-Appellant   )
                                )
                                )
                                )
vs.                             )
                                )    HON. HOWELL N. PEOPLES
                                )    CHANCELLOR
                                )
HERMAN WALLDORF & COMPANY,       )
INC., and C. HSIUNG CHEN AND    )
LANA CHEN, individually and     )
d/b/a HIGHWAY 58 COMMONS,        )    AFFIRMED IN PART
                                )    REVERSED IN PART
          Defendants-Appellees )    REMANDED

**JUDGMENT**

This appeal came on to be heard upon the record from the Chancery Court of Hamilton County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was some reversible error in the trial court.

The award of costs to each defendant under Rule 68, totalling $7,288.76, is reversed, and the remainder of the trial court's judgment is affirmed. Costs on appeal are taxed equally among the appellant, appellee Chen, and appellee, Herman Walldorf & Company.

PER CURIAM