# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
(May 12, 2004 Session)

## JAMES A. BLEDSOE AND NANNIE BLEDSOE v. RANDALL BUTTRY AND GRANGE INSURANCE COMPANY

**Direct Appeal from the Circuit Court for Hawkins County**
**No.  5150  John K. Wilson, Circuit Judge**

---

**No. E2003-01576-COA-R3-CV  - FILED OCTOBER 25, 2004**

---

James A. Bledsoe and wife, Nannie, sued Randall Buttry and Grange Insurance Company (uninsured motorist carrier) for damages sustained in a motor vehicle crash.  The Bledsoe's claim the jury verdict was insufficient and that the trial court erred in certain evidentiary rulings.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right, Judgment of the Hawkins County Circuit Court Affirmed, Case Remanded.**

HOWELL N. PEOPLES, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P. J., E.S. AND D. MICHAEL SWINEY, J., joined.

Phillip L. Boyd, Boyd & Boyd, Rogersville, Tennessee, for the Appellant James A. Bledsoe and Nannie Bledsoe.

Thomas J. Kilday, Milligan & Coleman, Greenville, Tennessee, for Appellee Randall Buttry.

## OPINION

On June 12, 1999, Appellee, Randall Buttry, was driving his vehicle south on Highway 66 in Rogersville, Tennessee. As Buttry approached a line of cars stopped for a bridge construction project, he had a seizure and his vehicle sideswiped four of the stopped vehicles. He had suffered a seizure three to four months earlier and a second seizure a month or two before the accident.  Mr. Buttry was supposed to take seizure medication three times a day, in the morning, at lunch and in the evening.  Buttry had worked for three or four hours that morning and become tired.  He decided to go home and finish his work later; he had not taken his lunchtime medication for seizures at the time of the accident.

Appellant, James A. Bledsoe, was the driver of a 1991 Dodge pickup truck, the third vehicle Buttry struck. Mr. Bledsoe filed suit for personal injuries and property damage, and his wife, Nannie Bledsoe, sued for loss of consortium. Buttry was an uninsured motorist and Grange Insurance Company was made a defendant for the purposes of the uninsured motorist claim. The case was tried before a jury on January 15 and 16, 2003. The trial judge granted a directed verdict for the Appellants on the issue of liability at the close of the proof. The jury returned a verdict awarding James Bledsoe the sum of $3,000 for damages to his truck, $3,000 for his personal injuries, and nothing for Nannie Bledsoe on her claim for loss of services. The Bledsoes filed a motion for new trial or additur, which the trial court denied. The trial court also found that Buttry's motion seeking a new trial solely on the issue of liability was moot. The Bledsoes have appealed and Buttry has cross-appealed for the sole purpose of seeking a new trial on the issue of liability if a new trial is granted.

Issues

As Appellants, the Bledsoes present the following issues:

1. Was the amount of the verdict within the range of reasonableness?
2. Did the trial court err in allowing defense counsel to ask leading questions of Dr. Ragland?
3. Did the trial court allow defense counsel to violate prior evidentiary rulings?
4. Did the trial court err in allowing defense counsel to question Plaintiff about injuries sustained in a subsequent accident?
5. Did the trial court err in allowing defense counsel to question Mr. Bledsoe regarding the property damage to his vehicle?
6. Did the trial court err in refusing to submit a summary of Mr. Bledsoe's medical bills to the jury?
7. Did the trial court err in admitting medical records from Mountain Comprehensive Corporation?

Appellee on cross-appeal raises the issue of whether the trial court erred in directing a verdict for Appellants on the issue of liability.

Standard of Review

Our review of the findings of fact in this case is limited. Tenn.R.App.P. 13(d) provides in pertinent part: "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." When determining whether there is substantial evidence to support the verdict, we may not weigh the evidence or decide where the preponderance lies. We must "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all (countervailing) evidence." *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree*

*Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4,5 (Tenn. 1978); *Black V. Quinn,* 646 S.W.2d 437, 439-40 (Tenn.App. 1982)).

Our consideration of evidentiary issues is limited to those errors that affect a substantial right of a party. Tenn.R.Evid. 103(a); Tenn. R. App. P. 36(b).

<u>Discussion</u>

I.

A. Mr. Bledsoe's Personal Injuries

Appellants contend that the verdict was not in the range of reasonableness. Mr. Bledsoe is a 48-year-old resident of Partridge, Kentucky. He has driven a logging truck for the last ten years. He is six feet tall and weighs 400 pounds. He and Nannie Bledsoe have been married for 28 years. At the time of the accident, he was wearing his seatbelt with shoulder harness. After the accident, he got out of his vehicle and looked at the other vehicles. Of the four vehicles that were sideswiped, Mr. Bledsoe was the only occupant who reported being hurt.

Following the accident, Mr. Bledsoe was examined and released at the local hospital emergency room. He testified that he had pain in his neck at the emergency room. Emergency room records do not reflect that he reported problems with his neck, but do reflect that two physicians palpated his neck at separate intervals with no tenderness and no complaint of pain. At the trial, Mr. Bledsoe testified that his head struck and cracked the rear window of his truck. This contradicted his deposition testimony that the window was not cracked. After his release from the emergency room, he rode home to Kentucky. The accident occurred on Saturday. Mr. Bledsoe spent Sunday at home and sought no medical treatment.

On Monday, he returned to his regular work activities driving a logging truck twelve hours a day and has continued to do so except for a brief period following a subsequent vehicle accident. Two and one-half weeks after the accident, he saw a doctor solely to obtain a refill of his hypertension medication. In the three and one-half years after the accident, Mr. Bledsoe continued to drive his ten-wheel logging truck 60 hours per week driving over some unpaved roads that shook the truck pretty good. He admitted that he sometimes drove difficult routes that required harder steering and gear changing to avoid scales that measure the loads on the truck. Since the accident, in addition to driving the logging truck, Mr. Bledsoe has used a bulldozer, dump truck and backhoe on at least two jobs. In the spring of 2000, Mr. Bledsoe bought a pontoon boat, which he uses for pleasure riding and fishing. He has continued to ride his 4-wheeler in the mountains. His income has increased each year since the accident.

On January 11, 2000, seven months after the crash with Buttry, Mr. Bledsoe was in another accident. His vehicle was struck head on by another truck. He missed two weeks of work after this accident and saw a neurosurgeon. He was placed on light duty for several months. Because of this accident, he made a workers' compensation claim in Kentucky and filed a civil lawsuit alleging that he sustained serious injury to his neck and left shoulder. Both

claims are still pending. In the present suit, Mr. Bledsoe also claims that he suffered injury to his neck and left shoulder. Mr. Bledsoe also has pending a lawsuit against a diet pill manufacturer in which he claims injuries. Mr. Bledsoe testified that the medical treatment and expenses incurred since January 11, 2000 had to do with both of his accidents.

Mr. Bledsoe contends the proof that his injury resulted from the crash with Buttry is uncontradicted. He relies on the testimony of Dr. Greg Wheeler that an MRI performed on January 10, 2000, one day before the accident in Kentucky, shows

> some disc bulging around the cervical spine, C2-3, 3-4, 4-5. He has a broad-based disc herniation at C5-6 with borderline central stenosis and particularly right-sided stenosis in the area of the foramen where the nerves come out of the spine. He also had a diffuse disc bulge at C6-7 and both neuroforamens were stenotic meaning narrower than usual.

Dr. Wheeler assessed a permanent impairment of five to eight percent to the whole body. Dr. Wheeler also testified that Mr. Bledsoe's medical expenses totaling $3,692.05 were reasonable and necessary as a result of the accident of June 12, 1999.

Dr. Wheeler did not see Mr. Bledsoe again until August 31, 2001. He testified that the symptoms that Mr. Bledsoe reported then were inconsistent with the MRI findings. "He mainly had symptoms in his left upper extremity whereas the MRI showed more problems on the right." On November 9, 2001, the date of the second and last visit to Dr. Wheeler, Mr. Bledsoe had no objective findings and no spinal instability. The purpose of the second visit was to have Dr. Wheeler fill out a form for Mr. Bledsoe's attorney. Dr. Wheeler opined that because of his MRI findings and persistent pain, Mr. Bledsoe should avoid lifting, raising his arms above his head, and "particularly if he has to take some medicine, he should avoid working with heavy machinery, should avoid driving." Dr. Wheeler was cross-examined at length about what specific information he was provided concerning Mr. Bledsoe's complaints and physical condition before the date of the accident and about his complaints, extensive work activities, and medical history following the accident with Buttry. Dr. Wheeler had "no idea concerning that history." He admitted that he could not say when the herniated disc occurred and had no idea what Mr. Bledsoe's cervical spine looked like before the accident of June 12, 1999.

Dr. Joel Ragland, neurological surgeon, testified by deposition for the Defendant. He examined Mr. Bledsoe on July 29, 2002 and reviewed his x-rays and actual MRIs, and other medical records. He found no evidence of any neurologic injury to Mr. Bledsoe. He testified that Mr. Bledsoe reported that he felt like his neck symptoms had been worsened by the second accident on January 11. 2000. Dr. Ragland assessed a six percent medical impairment based on soft tissue injuries sustained in the 1999 injury.

Counsel for Mr. Bledsoe cites the permanent impairments of six and eight percent assessed by his physicians and asserts that the award of $3,000 for personal injuries (a) did not fairly compensate for his medical bills, (b) awarded nothing for pain and suffering, (c) awarded nothing for loss of ability to work, and (d) awarded nothing for his permanent impairment. Juries are not bound to accept expert medical opinion. *Poole v. Kroger Co.*, 604 S.W.2d 52, 55

(Tenn. 1980). This is especially true when the physician has an inadequate or incomplete knowledge of the patient's history.

Based on this record, the jury could well have determined that Mr. Bledsoe's complaints to the doctor were inconsistent with his actual work and leisure activities following the accident, that he magnified his symptoms, or that Buttry should not be liable for medical expenses and impairment resulting from the subsequent accident in Kentucky. We find material evidence in the record to sustain the verdict of the jury.

## B. Bledsoe's Property Damages

Mr. Bledsoe complains that $3,000 for property damages is inadequate as a matter of law. He testified that his truck was "totaled" in the accident and that its value diminished from $15,000 to $4,000. He had purchased the 1991 Dodge Pick-up used in 1993 for $16,500. He had driven it for three years prior to the accident. He brought the truck back to Kentucky on the day of the accident and, with help, made repairs himself to a damaged spring, made a replacement muffler, and replaced the bed. Photographs of the truck taken after the accident were shown to the jury. Mr. Bledsoe believed that he may have spent $3,500 to $4,000 in repairs. He provided no documentation of expenses or materials involved in repairing the truck. He drove the truck for three years after the accident until the fall of 2003 when he traded it to a cousin who drove it to Texas. This admission by Mr. Bledsoe contradicts his testimony that the truck was a total loss. If the truck was capable of being repaired, the measure of damages is the cost of repair plus loss of use rather than the diminution in value of the property. *Tire Shredders, Inc. v. ERM-North Central*, 15 S.W.3d 849, 855 (Tenn.App. 1999). The standard of review in determining whether a new trial should be required because of inadequacy of a jury verdict is whether the amount awarded falls below the range of reasonableness. We conclude that the verdict of $3,000 for property damage is within the range of reasonableness and is supported by evidence.

## C. Mrs. Bledsoe's Loss of Consortium

Mrs. Bledsoe complains that the jury awarded no damages for her derivative claim for loss of companionship and consortium. Based on Mr. Bledsoe's admitted working 60 hours each week, his continuing to engage in physically demanding recreational pursuits, his repair of his vehicle, and other activities since the accident, the jury could reasonably conclude that Mrs. Bledsoe had no loss of companionship or services.

## II.

Appellants complain that the trial court allowed defense counsel to ask leading questions of Dr. Joel Ragland, a witness called by the defense. Appellants' brief specifically cites the following questions:

1. Doctor, given someone of Mr. Bledsoe's age, and size, and degenerative changes to his neck and spine, is it extraordinary or unusual to have aches and pains to the neck, regardless of whether you have an injury or not?
2. Doctor, did Mr. Bledsoe report to you about----when he came to you about other medical problems that he had that were not controlled?
3. Doctor, with respect to Mr. Bledsoe's complaint that he'd sustained a neck injury or whiplash in this June, 1999 accident...
4. And would you tell us whether or not that---the condition that he described to you is commonly referred to as a whiplash?
5. All right, sir. Doctor, Mr. Boyd asked you about permanent impairment, and whether or not a rating would be called for under the American Medical Association Guides for Permanent Impairment. Someone with Mr. Bledsoe's pre-existing degenerative spinal changes, that is, changes that existed before June of 1999, if they exhibited those changes, and if they complained of pain to the neck, even if they did not have an accident or any injury, would you tell us whether or not they would qualify for a permanent impairment rating under those guidelines?
6. All right. Doctor, Mr. Boyd asked you to hypothesize about whether or not Mr. Bledsoe's pain to his head may have been so bad that it overrode the pain to the neck on the occasion of the accident, and in light of that, was – regardless of his condition, what do the records reflect, and Mr. Bledsoe's history, what was it to you, with respect to whether or not he was allowed to be released from the hospital after he was examined following this accident?
7. All right. What did Mr. Bledsoe tell you, and what did the hospital records reflect, with respect to whether or not he was permitted to be released from the hospital emergency room without being admitted following this accident?
8. Did he tell you whether or not, following his discharge from the hospital with admission, that he got in the vehicle and rode back to Kentucky?
9. Did he tell you whether or not after he got back to Kentucky following the Saturday accident, he went back to work doing his regular duties driving a log truck on Monday morning?
10. Did he tell you whether or not he was having any head pain that overrode any neck injury to the extent that prevented him from getting in a vehicle and riding back to Kentucky on the afternoon of this accident?

Leading questions may be used on direct examination only as necessary to develop testimony. Leading questions are properly allowed when a witness is determined to be hostile or when the witness is an adverse party, or on cross-examination. Tenn.R.Evid. 611. A leading question is one that suggests the answer. We do not perceive the questions cited by Appellants to suggest the response to be given by the witness. We note that the propriety, scope, and manner of examination of witnesses is controlled by the trial court and will not be disturbed in the

absence of plain error or abuse of discretion. *Woods v. Herman Walldorf & Co.*, 26 S.W.3d 868, 877 (Tenn.App. 1999). We find no error.

III.

Appellants complain that counsel for Appellee offered evidence that had been ruled inadmissible or sought to admit irrelevant and inadmissible evidence. Appellants had filed a motion in limine seeking to limit reference to the Kentucky accident involving Mr. Bledsoe. The trial court, by order, specifically allowed evidence of that accident, but directed that the parties and counsel not introduce evidence of a lawsuit regarding the accident without first receiving permission from the court. At trial, counsel for the defense asked Mr. Bledsoe whether he was injured in that accident. Mr. Bledsoe answered: "No, sir." Counsel then asked: "I know that Kentucky has a longer statute of limitations than Tennessee does. Are you planning to make a claim for personal injury ---?" Mr. Bledsoe answered: "No, sir." Counsel for Appellants made no objection or motion to strike and requested no curative instruction from the court at that time. Lack of a timely objection or motion to strike constitutes a waiver and bars a challenge on appeal. Tenn.R.Evid. 103; *Davidson v. Holtzman*, 47 S.W.3d 445, 456 (Tenn.App. 2000).

Appellants also complain that counsel for Appellee asked Mr. Bledsoe if he had filed a workers' compensation claim for the second accident. Appellee responds, and we agree, that the evidence is relevant to Appellee's contention that Mr. Bledsoe was not injured in the June 1999 accident and that any neck and shoulder problems were caused by degenerative changes or by the subsequent Kentucky accident.

Mr. Bledsoe contends it was error to permit Appellee to cross-examine him about his participation as a party plaintiff in a class action lawsuit against diet pill manufacturers. Appellee points out that counsel for Appellants, on direct examination, elicited Mr. Bledsoe's testimony that he 'weighed 400 pounds, tried every fad to try to control his weight, and became involved in a lawsuit involving people who used Phen-fen diet pills. Having spilled the water, Mr. Bledsoe cannot now complain about getting wet.

Next, Mr. Bledsoe states that counsel for Appellee asked questions about his hypertension and arthritic condition, about blood pressure problems and diabetes, chronic obesity and high cholesterol that the trial court permitted saying, "He (Appellee) needs to connect it up in some way...." Appellants complain that the record is devoid of any connection, and that the trial court failed to give a curative instruction. The record is also devoid of any request by Appellants for such a curative instruction. A party who fails to take reasonable steps to cure an error in the trial court is not entitled to relief on appeal. Tenn.R.App.P. 36(a); *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. App.2000)

Appellants contend that Rule 403 of the Tennessee Rules of Evidence was violated when the trial court failed to instruct the jury to disregard questions about Mr. Bledsoe's failure to report income on his tax return. Again, the record does not reflect that a request for a curative instruction was made.

Finally, Appellants complain that inadmissible evidence was offered when the investigating officer was asked (1) whether he found evidence of excessive speed on the part of Mr. Buttry, and (2) if he placed charges or issued tickets to anyone. The trial court, in fact, sustained objections to the questions and again no curative instructions were requested.

IV.

Mr. Bledsoe asserts: "The Court erred in allowing the Appellee to impeach Appellant regarding a second accident which happened on January 11, 2000." He complains that the trial court allowed irrelevant evidence about the second accident and Appellant's resulting counter-claim which had never been resolved. Appellee responds that Appellants, in the present suit, contend that the accident with Mr. Buttry resulted in Mr. Bledsoe's neck and shoulder injury, all medical expenses that he has incurred, and all his various aches, pains and limitations. Appellee argues that he is entitled to show that Mr. Bledsoe was not injured in the accident with Mr. Buttry, but that his aches, pains, and medical expenses were caused by unrelated conditions that either pre-dated or arose subsequent to the Buttry accident. Appellee points out that Mr. Bledsoe, when asked about the second accident in Kentucky, testified: "I was in a lot of pain. I thought I wasn't going to survive." While Mr. Bledsoe missed no work after the accident with Buttry, he missed two weeks after the Kentucky accident and was on light duty for several months. He admitted that the injuries sustained in the Kentucky accident are the same as the injuries he claims were caused by Mr. Buttry. The evidence was clearly relevant on the issue of whether the losses and damages were solely or entirely caused by the accident of June 1999.

V.

Mr. Bledsoe next argues that "(t)he court erred in permitting the counsel for the appellee to question the appellant regarding the property damage to the appellant's vehicle." On direct examination, Mr. Bledsoe was asked and he answered as follows:

Q All right, sir. And did you – After the accident done to it, was it
drivable, was it usable?
A Not until it had some work done on it.

Mr. Bledsoe then testified that the fair market value of the 1991 Dodge Ram truck before the accident was $15,000 and $4,000 after the accident before any repairs. His counsel objected to cross-examination about the cost of repairs to the vehicle. The trial court overruled the objection. Mr. Bledsoe testified that he did not know the exact amount spent on repairs. He admitted that he drove the truck for three and one-half years after the accident and sold it to his cousin who drove it to Texas. He now asserts that the repairs had nothing to do with the value of the truck after the accident. Whether the truck was capable of being repaired so as to substantially restore it to its fair market value before the accident was a question of fact to be determined by the jury. *Yazoo & M.V.R. Co. v. Williams*, 182 Tenn. 241, 185 S.W.2d 527, 529-30 (1945). The jury was provided photographs of the truck immediately after the accident and photographs after repairs had been made. Mr. Bledsoe testified that he repaired the truck and

continued to use it after the accident. No one testified that the repairs did not restore the truck to its function, appearance and value preceding the accident. SEE T.P.I. 3—Civil 14.40. We find no error in permitting evidence about the repairs made and the cost of the repairs.

## VI.

Appellants next claim the trial court "erred in not permitting a summary of the medical bills to be admitted as an exhibit to be passed to the jury." During the trial, counsel for Appellant offered, and the trial court admitted as an exhibit, the medical records of Dr. Greg Wheeler. The records included both a summary of medical bills and the bills themselves. After retiring to deliberate, the jury requested the exhibits. Counsel for the Appellants requested that only the summary of the medical bills be provided to the jury because the records showed insurance payments. After hearing argument that the dates of service and the type and nature of the services were issues in dispute, the trial court directed that the jury be provided a copy of the medical records with any references to insurance deleted or redacted. Having originally offered the records, Appellants cannot now object to their consideration by the jury. We note also that the charge given the jury directed that the "matter of insurance or lack thereof should not be considered by you. Please base your decision on the facts and evidence." Further, we find no error in providing a copy of the records with references to "insurance" redacted.

## VII.

Finally, Appellants complain that the trial court "erred in admitting medical records from Mountain Comprehensive Corporation into evidence in this case." In his brief, counsel for Appellant states that the basis for his objection to the records is that the individual offered as a witness to identify the document was not properly qualified because "she had only been an employee of the hospital for thirty days ... and nearly all of the records had been generated prior to her ever becoming an employee." He asserts that the records did not qualify for introduction under Rule 803(6) of the Tennessee Rules of Evidence because they were improperly admitted by a custodian who is not qualified, and because they were certified according to Kentucky statutes instead of Tenn. Code Ann. §§24-9-101(8) and 68-11-401 et seq. The trial transcript reflects that when the medical records were offered, counsel for Appellants did not object that the witness was not the custodian or that the records were not properly certified. He said, "Again, I object your Honor. It's immaterial to this case." A party is bound by the evidentiary theory set forth at trial and cannot change theories on appeal. *State v. Alder*, 71 S.W.3d 299, 303 (Tenn.Crim.App.2001). After opposing counsel had finished offering portions of the records, counsel for Appellants then said, "Judge, I may have a couple to read here, if you give me just one second." He then proceeded to read to the jury the records from four separate visits -- records that he now maintains were improperly admitted because the identifying witness was not qualified and they were not properly certified. Any objection to the records was waived by counsel's use of the same records. The assignment of error has no merit.

10

VIII.

The Appellee asserts that if this court should grant Appellants a new trial, the Appellee should also be granted a new trial on the issue of liability because the trial court's grant of a directed verdict in favor of Appellants on the issue of liability was error. Our disposition of the appeal renders this request moot.


<u>Conclusion</u>

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, James A. Bledsoe and Nannie Bledsoe, and their surety.


_____
Howell N. Peoples, Special Judge